There is no error.

CITY OF MIDDLETOWN ET AL. *v.* HARTFORD
ELECTRIC LIGHT COMPANY ET AL.
(10613)

PETERS, GRILLO, DALY, SPONZO and MENT, Js.

Argued December 6, 1983—decision released April 3, 1984

*Francis O'Neill,* city attorney, for the appellants (plaintiffs).

*Bourke G. Spellacy,* with whom were *Mark J. Zimmermann* and, on the brief, *Elizabeth R. Collins* and *Heidi J. Seebauer,* for the appellees (defendants).

*Janet Brooks* and *Michael Hotchkin,* law student intern, filed a brief as amici curiae.

PETERS, J. The principal issue in this case is whether the plaintiffs have established the factual and legal predicates of their environmental challenge to the defendants' proposed disposal of toxic substances. The plaintiffs, the city of Middletown and Robert W. Frank,

the city's zoning enforcement officer, brought an action in eight counts to enjoin the defendants, the Hartford Electric Light Company (HELCO) and its parent company, Northeast Utilities, from burning mineral oil containing polychlorinated biphenyls (PCBs) at HELCO's electric generating plant in Middletown. The trial court, after a full hearing, dismissed counts one through six, and count eight, and ruled for the defendants on the merits of count seven. The plaintiffs have appealed all but the seventh count.

The trial court's memorandum of decision contains the following finding of facts: HELCO operates a high efficiency boiler at its Middletown power generating facility, which is located in an area which is not an inland wetland. There, HELCO proposed to burn approximately 30,000 gallons per year of mineral oil that contains or may contain PCBs. The mineral oil is to be trucked to Middletown from other HELCO facilities where the contaminated oil was used as an insulating fluid in transformers and switch gear. Although the mineral oil is more highly refined than the fuel oil normally used to fire the boilers at the Middletown generating plant, it is usable and is proposed to be used as fuel oil for boiler No. 3 at the Middletown site.

The plaintiffs' complaint is not aimed at the burning of the mineral oil itself but rather at the consequential proposed burning of the PCBs with which the mineral oil is contaminated. Because of this contamination, the mineral oil, like PCB itself, is a suspected carcinogen and poses a potential health hazard. In recognition of the toxic qualities of PCB, both the federal government and the state have regulated the disposal of substances containing PCBs. The defendants accordingly sought and obtained approval of their proposed burning of the mineral oil at the Middletown plant from both

the United States Environmental Protection Agency (EPA)[1] and the Connecticut Department of Environmental Protection (DEP).

With regard to the environmental risks associated with the proposed burning program, the trial court specifically found that "[t]he evidence fails to establish that any ascertainable amount of pollutants will be produced." "Further," the court found, "the evidence fails to establish by a fair preponderance that any specific amount, or in fact any amount, of any or what material emitted from the boiler stacks at the [defendants'] burning site might be deposited on any parcel of the [city's] real estate. There is neither pleading nor proof that the [defendants have] caused or will cause any disturbance or interference to the [city's] use and enjoyment of its property."

On the basis of these findings of fact, the trial court found the issues for the defendants on all eight counts of the plaintiffs' complaint. In their appeal from the dismissal of counts one through six and eight, the plaintiffs have raised six claims of error. They challenge the trial court's legal conclusion that their claims, on counts three, four, five and six are preempted by federal law, and that they have no standing to pursue counts three, four, six and eight. They challenge the trial court's mixed findings of fact and law: that count one of the complaint was subject to dismissal because the defendants were not operating a solid waste disposal facility; that count two was subject to dismissal because the defendants' proposed burning was not subject to local inland wetland regulations; and that count eight was

---

[1] Applicable EPA regulations permit disposal of mineral oil containing PCBs in only four ways: burning the oil in a high efficiency burner; depositing the oil in a specially approved chemical landfill; incineration of the oil; and other means of destruction approved by EPA. 40 C.F.R. § 761.60 (a) (2). Testimony at the trial indicated that only the first two of these options were available for disposition of this mineral oil, and that burning the oil in a high efficiency boiler would destroy at least 99.95 percent of the PCBs.

subject to dismissal because the defendants' proposed program was not a modification of the Middletown plant. Because we agree with the trial court's conclusion with regard to the plaintiffs' lack of standing to pursue counts three, four, six and eight and with its factual determinations with regard to the plaintiffs' remaining counts, we find no error in its judgment without reaching the issue of preemption.

I

The issue of the plaintiffs' standing must be addressed before we reach the substantive merits of the plaintiffs' claim, because standing has jurisdictional implications. *Molitor* v. *Molitor,* 184 Conn. 530, 532–33, 440 A.2d 215 (1981); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 491, 400 A.2d 726 (1978). In counts three, four, six and eight of the plaintiffs' complaint, they sought to enjoin the defendants' proposed burning program for failure to obtain a variety of approvals and permits. They claim that the defendants were obligated to obtain: a PCB disposal permit under General Statutes § 22a-467 (formerly § 25-54vv); a solid waste facility permit under General Statutes § 22a-208 (formerly § 19-524b); a toxic waste disposal permit under General Statutes § 22a-220 (formerly § 19-524n); a new air contaminant permit under General Statutes § 22a-174 (c) (formerly § 19-508 [c]); a water discharge permit under General Statutes § 22a-430 (formerly § 25-54i); a hazardous waste collection and treatment permit under General Statutes § 22a-454 (formerly § 25-54hh); and a certificate of environmental compatibility for modification of the Middletown plant under General Statutes § 16-50k. For all these claims, the trial court concluded that the plaintiffs lacked standing. We agree.

As in the trial court, the plaintiffs claim that they have standing both as a matter of classical aggrieve-

ment and as a matter of statutory entitlement under the Environmental Protection Act. The standing issues relate only to enforceable interests of the plaintiff city since no independent claims have been raised on behalf of the coplaintiff, the city's zoning enforcement officer.

With regard to the city's standing to challenge the defendants' failure to obtain permits, as a matter of classical aggrievement, the trial court held that the cited statutes authorized only administrative proceedings before the commissioner of the department of environmental protection and not a direct action for injunctive relief. In urging us, nonetheless, to imply the existence of a private enforcement mechanism, the city argues that, since it would have been aggrieved had the permits been granted, it is aggrieved by the failure of the defendants to apply for the permits. We are unpersuaded that the legislature intended, in the cited statutes, to create private causes of action to supplement the pervasive regulatory powers of the DEP over environmental licenses. When the legislature has authorized supplementary private causes of action, it has generally done so expressly. See, e.g., General Statutes §§ 22a-16 (Connecticut Environmental Protection Act) and 42-110g (a) (Connecticut Unfair Trade Practices Act). The legislature may well have concluded that private interests were amply served, without private causes of action, by affording access to private persons to the regulatory process by way of complaints to DEP or the council on environmental quality. General Statutes §§ 22a-6, 22a-13; see generally *Cort* v. *Ash,* 422 U.S. 66, 78–80, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975).

The city's alternate claim of standing rests on its statutory claim under the Environmental Protection Act, General Statutes § 22a-16. This statute permits any private party, including a municipality, to seek injunctive relief "for the protection of the public trust in the air, water and other natural resources of the state

from unreasonable pollution, impairment or destruction." We have recently concluded, however, as did the trial court herein, that invocation of the EPA is not an open sesame for standing to raise environmental claims with regard to any and all environmental legislation. In *Connecticut Fund for the Environment, Inc. v. Stamford*, 192 Conn. 247, 470 A.2d 1214 (1984), we held that § 22a-19 of the EPA, which permits any person, on the filing of a verified pleading, to intervene in any administrative proceeding and to raise therein environmental issues "must be read in connection with the legislation which defines the authority of the particular administrative agency. Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues. Thus, an inland wetland agency is limited to considering only environmental matters which impact on inland wetlands. Other environmental impacts must be raised before other appropriate administrative bodies, if any, or in their absence by the institution of an independent action pursuant to § 22a-16." Id., 250–51. These same principles apply to bar the city's standing under the licensing statutes. The trial court was therefore correct in concluding that § 22a-16 did not provide the plaintiffs with standing under any statute other than the Environmental Protection Act itself.[2]

## II

Our conclusion that the plaintiffs lacked standing to pursue counts three, four, six and eight of their complaint leaves for substantive review only the trial court's disposition of counts one, two and five. On each of these counts, the court made dispositive factual findings, whose validity the plaintiffs contest in part. As the plaintiffs recognize, these findings can be overturned on appeal only if, in light of the evidence and

---

[2] Such a claim was asserted only in the plaintiffs' fifth count.

the pleadings as a whole, they are clearly erroneous. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

In the first count of their complaint, the plaintiffs alleged that the defendants' proposed burning program violated Middletown zoning regulations concerning the operation of solid waste disposal facilities. The trial court ruled against the plaintiffs on two alternative grounds, that their regulations were preempted by the state regulatory activities of the Department of Public Utility Control (DPUC), and that their regulations were inapplicable because the defendants' burning of mineral oil did not constitute the operation of a solid waste disposal facility. In the latter regard, the court found, as a subsidiary fact, that the mineral oil was being used as a supplementary fuel at the HELCO power plant.

The trial court's ruling in the defendants' favor on this count must be sustained because the plaintiffs have not demonstrated that the court was clearly erroneous in its determination that the defendants were not proposing to operate a solid waste disposal facility. The plaintiffs principally attack the trial court's subsidiary finding that the mineral oil was to be used as a supplementary fuel. They do not challenge the accuracy of the court's description of the proposed burning plan. In the trial court's words, the burning program "encompasses the storage in a separate tank of the mineral oil; [and] its transmission through a separate boiler fuel oil feed line to the injector gun of boiler #3 where it will be mixed and [diffused] with the #6 heating oil that is generally used to fire these boilers." The plaintiffs argue, nonetheless, that the mineral oil was not a supplementary fuel because it was not purchased as a fuel oil and because it was being burned for disposal rather than for fuel purposes. We do not agree that these factors were necessarily inconsistent with

the trial court's finding that the actual use of the mineral oil, at the Middletown plant, was as a fuel oil.

Apart from their challenge to the characterization of the use of the mineral oil as a supplementary fuel, the plaintiffs have pointed to no evidence proving that the court was in error in finding the operation of the Middletown power plant not to be the operation of a solid waste disposal facility. The Middletown Zoning Code defines a "solid waste facility," without further elucidation, as "[a]ny solid waste disposal area, volume reduction plant or resource recovery facility operated by anyone, including a municipal or regional authority." Middletown Zoning Code § 16.19.04. Arguably, the definitions of such facilities under the state Solid Waste Management Act, General Statutes § 22a-207 (formerly § 19-524a), furnish an appropriate point of reference, as the plaintiffs suggest. In the absence of findings by the trial court about the applicability of these statutory definitions in the present circumstances, we do not have an adequate record for review and decline to consider the plaintiffs' claim.[3]

For similar reasons, we find no error in the trial court's disposition of the second count of the plaintiffs' complaint, in which the plaintiffs alleged a violation of Middletown's inland wetland regulations. Again, the trial court ruled for the defendants on two alternate grounds, preemption by the authority vested in the state DPUC and inapplicability of the local regulations. The court specifically found: "The proposed burning plan of the [defendants] does not come within the definition of a *regulated activity,* Conn. Gen. Stat. Sec. 22a-38 (13); nor does the evidence establish this activity will be conducted in a *regulated area."* (Emphasis in original.) No assignment of error has challenged the

---

[3] Had the plaintiffs wished to pursue this claim in the trial court, they could have asked the trial court for further articulation of its memorandum of decision. See Practice Book § 3082.

court's findings of fact, and the court's ruling must therefore stand.

Finally, we must consider the fifth count of the plaintiffs' complaint in which they alleged that burning of PCB contaminated mineral oil constituted a violation of the Connecticut Environmental Protection Act, General Statutes §§ 22a-14 through 22a-20. Specifically, they claimed that the defendants' plan "is reasonably likely to result in the unreasonable pollution, the impairment of and the destruction of the public trust in the air, water resources and other natural resources within the City." As to this count, the trial court expressly concluded that the plaintiffs had standing but were preempted from pursuit of their claim as a matter of federal law. Elsewhere in the memorandum of decision, however, in ruling on the plaintiffs' seventh count sounding in trespass, the court found, as a fact, that the evidence failed to establish that "any ascertainable amount of pollutants will be produced as a result of the proposed burning program of the [defendants]." In the concluding paragraph of the memorandum of decision, the trial court noted that the plaintiffs had failed to establish any cause of action, and in the judgment the court stated that it found "the issues for the defendants on Counts I through VIII of the amended complaint." The plaintiffs' appeal has not challenged the trial court's finding of fact.[4]

On this record, the defendants urge us to conclude that there can be no reversible error. The same evidence was heard with respect to the merits of all of the plaintiffs' claims. The defendants maintain that the unchallenged finding that the evidence failed to establish *any* ascertainable amount of pollution, and the trial court's unequivocal judgment in favor of the defendants on *all* issues, require us to hold that there was no

---

[4] No appeal whatsoever was taken with regard to the trial court's judgment on the seventh count.

factual basis to support the plaintiffs' claim. We agree. Whatever the specific reasons assigned by the trial court for its judgment on this claim, if the plaintiffs have failed to establish the factual underpinning for their cause of action, they cannot prevail. Whether or not we agree with the trial court's reasoning on pre-emption, we can sustain its judgment on the alternate ground of factual insufficiency. See *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 532, 461 A.2d 1369 (1983); *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 54, 434 A.2d 306 (1980); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

There is no error.

In this opinion the other judges concurred.