[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION TO CONFIRM ARBITRATION AWARD, APPLICATION TO VACATE ARBITRATION AWARD, AND MOTION TO DISMISS
This matter comes before the court as a result of various motions rising out of an arbitration award. There are motions to vacate the arbitration award, to confirm the award, and to dismiss the application to confirm the award.
The plaintiff's are Agnes-Sue Associates and Kevin Coady and Bruce Kuryla as individuals and as partners of Agnes-Sue. They are the authors of the motion to vacate the award and to dismiss the application to confirm the award. The application to confirm the award was filed by Nicholas L. Cerino.
The subject matter of the dispute is property located at 160-164 Rogers Avenue, Milford, Connecticut, upon which there is a marina with ancillary facilities known as Port Milford.
In December of 1981 Agnes-Sue Associates, a general partnership, was created by Coady and Kuryla for the purpose of purchasing and developing the subject property as a commercial marina.
During September of 1983 the plaintiffs entered into a Memorandum of Understanding with the defendant Cerino acknowledging his contributions to the development of the property and agreeing to provide Cerino with an exclusive lease and license to conduct a CT Page 9728 marine sales and service operation on the property; to manage the operation of the marina; to grant him a 25% interest in the Milford Wharf Co., d/b/a Port Milford, which corporation was formed by the plaintiffs for the purpose of operating the marina and its business activities on the property.
Subsequently, on December 14, 1983, pursuant to the understanding, the plaintiffs Coady and Kuryla d/b/a Agnes-Sue, entered into a lease with the defendant Cerino permitting Cerino or any business owned or controlled by him to establish, maintain and operate a business upon the premises for the sale, service, maintenance, repair or demonstration of watercraft.
On May 16, 1984, Coady and Kuryla executed an amendment to the Partnership Agreement granting Cerino a 25% interest in the same.
Subsequently, areas of disagreement arose between the parties resulting in Cerino, on July 31, 1990, filing a demand for arbitration with the American Arbitration Association. Thereafter on November 26, 1990, Agnes-Sue, Coady and Kuryla, filed a counter demand for arbitration followed by a supplement being filed on December 26, 1990 with the arbitrator's consent. Both the Partnership Agreement and the Lease contained provisions for submitting any grievance or disagreement to arbitration.
Hearings were held before the arbitrators and, after several days of hearings and a delay due to a bankruptcy, a decision was made by the arbitrator's evidence by his decision dated March 23, 1993. Thereafter, the subject applications to confirm and vacate the award were filed in this court along with a motion to dismiss the award.
The plaintiffs have filed a motion to dismiss alleging that the court lacks subject matter jurisdiction because the defendant Cerino lacks standing.
 "The issue of standing implicates this court's subject matter jurisdiction, Middletown v. Hartford Electric Light Co., 192 Conn. 591, 595, 473 A.2d 787 (1984); and, therefore, must be addressed whether or not it was raised at trial or on appeal. (Citations omitted.)
 `When standing is put in issue the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether CT Page 9729 the controversy is otherwise justiciable, or whether, on the merits the [defendant] has a legally protected interest that the [plaintiff's] action has invaded.'" (Citations omitted.) Planning and Zoning Commission v. Gaal, 9 Conn. App. 538, 542-543.
First, the plaintiffs' claims that the arbitrator lacked jurisdiction to enter an award against the Milford Wharf Co. based on the fact that there was no arbitration agreement between its stockholders and in fact was not even a party to the arbitration.
Secondly, that although the partnership Agnes-Sue was a party to the arbitration, Cerino lacks "standing" to assert the rights and claims he has asserted.
Thirdly, the first action brought by the plaintiffs against Cerino sought damages for breach of the lease. This is based on the fact that Cerino has evidently conveyed all of his right, title and interests in and to profits, losses, cash, distributions and any other deriving from his ownership interests but expressly reserving any of his ownership interest in Agnes-Sue Associates, Milford Wharf Co. and Cerino's Auto and Marine Ltd. an alternate lease under the terms of the lease.
Plaintiffs allege that because Cerino reserved to himself what they allege to be only naked title in the corporations after conveying his rights and benefits to Marineland, claiming that he lost any standing he might have had in this matter.
As to the Milford Wharf Co., while plaintiffs allege that there is no arbitration agreement between Cerino and Milford Wharf Co., the court notes that the ownership of Milford Wharf Co. and Agnes-Sue are exactly the same. Milford Wharf Co. is a mere instrumentality of Agnes-Sue, created by it for the sole purpose of running the commercial marina while the partnership was created to establish and run a commercial marina. The partnership owned the assets while the corporation used those assets. The plaintiffs base their subject matter jurisdiction argument on the case of Bennett v. Meader, 208 Conn. 352 (1988). In that case the parties arbitrated based on an oral agreement. Here, there are two written agreements both containing arbitrator's clauses of an unrestricted nature. The identity of the ownership interest between the partnership and the corporation were of such an identical nature that the arbitrator was within his authority to order both the partnership and the corporation to file an accounting. CT Page 9730
If a non-party corporation is the party's alter ego, it will be bound by the arbitrator's agreement. See Dombe on Commercial Arbitration, p. 119-120.
The plaintiffs further claim in their demand for arbitration that Cerino delivered purported stock certificates of the Milford Wharf Co. to himself, thereafter causing the same to be delivered to a lending institution as collateral, in violation of his agreement with Coady and Kuryla.
Cerino's right to the stock was created in the Memorandum of Understanding dated September 20, 1983. In that agreement they agreed to give Cerino a 25% interest in the corporation. The arbitrator's order is directed to Coady and Kuryla, the signatories to that agreement. The obligation is a personal one and the order of the arbitrator is directed to them and not the corporation.
That the parties intended to arbitrate their interests in the corporation is obvious from the defendant Cerino's Demand for Arbitration and the plaintiff's counter-demand. The question of delivery of the stock certificate and Cerino's entitlement thereto were litigated at length during the hearings before the arbitrator. This was done without reservation, thus waiving the question of arbitrability. See City of New Britain v. Connecticut State Board of Arbitrators, 178 Conn. 557, 560-561 (1979); Waterbury Board of Education v. Waterbury Teacher's Association, 168 Conn. 54, 62-63
(1975).
The argument that Cerino lacks standing as a result of his conveying to Marine Recreational Opportunities Inc. and MRO Land Inc. all of his right, title and interest in and to profits, losses, cash distributions and any other benefits whatsoever deriving from his ownership interests in Agnes-Sue Associates and Milford Wharf Co. but expressly not transferring any ownership interest would not leave him with such naked title as to cause him to lose standing. The defendant Cerino did not attempt to convey any specific partnership property which in fact he could not assign without the other partners joining in the assignment. See Conn. General Statutes 34-63(2)(b). A specific reservation was made by Cerino in paragraph G.2 of his agreement with Marineland. ". . ., and all managerial, operational and executive decisions regarding CMI and the marina shall be made solely by Cerino." Thus one can see that Cerino at no time intended to convey away any of his managerial rights and is consistent with Conn. General Statutes CT Page 9731 34-61(1) which prohibits the assignment of management rights absent the agreement of all partners.
Section 34-65(1) of the Conn. General Statutes as it relates to the rights of an assignee of a partner reads as follows:
 "(1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitled the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled."
By the language of paragraph G.2 of the agreement between Cerino and Marineland it is obvious that he did not intend to convey away any of his ownership interests in Agnes-Sue or Milford Wharf Co. He merely conveyed his share in the profits, surplus or losses in the two entities. The language is clear and unambiguous. In Barnard v. Barnard, 214 Conn. 99, 110 (1990) our Supreme Court stated:
 "[W]here the language of the contract is clear and unambiguous the contract is to be given effect according to its terms. `A court will not torture words to impart ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for, different meanings.'" (Citations omitted.)
What was retained by Cerino was substantial in nature. That interest enables him to bring any action relating to the partnership or corporation. See Gaul v. Baker, 108 Conn. 173, 176
(1928); Maller and Horton, Connecticut Practice Sec. 104 (Author's Comments).
The court finds that the defendant Cerino has standing to initiate the arbitration and thus move to confirm the award.
As to the question of whether the submission is restricted or all inclusive, one might normally look at the underlying agreement CT Page 9732 which contains the arbitration clauses. Both the Partnership Agreement and the lease contain provisions calling for arbitration in the event of any dispute or grievance. The language contained in the agreement and the lease constitute the submission.
 "If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration. Gores v. Rosenthal, 150 Conn. 554, 557, 192 A.2d 210 (1963); Batter Building Materials Co. v. Kirschner, 142 Conn. 1, 9, 110 A.2d 465 (1954). This submission can be invoked by a demand for arbitration by one or both parties when a dispute arises. The agreement for submission constitutes the charter for the entire ensuing arbitration proceedings." Vail v. American Way Homes, Inc., 181 Conn. 449, 451 (1980).
Both the partnership agreement and the lease contain these submission. It remains then for the court to determine whether they were restricted or unrestricted. In both instruments the language thereof indicates that the submissions were of an unrestricted nature.
The partnership agreement states that "any controversy or claim arising out of or relating to this agreement or claimed breach thereof", while the lease reads that "if any dispute arises during the term of this lease or any extension thereof". From this language one must conclude that there was no reservation as to the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Citations omitted.)
The court finds that the arbitrator did not exceed his authority that he was presented with an unrestricted submission and, the award did not exceed the scope of that submission.
The Motion to Dismiss is denied.
The Application to Vacate the Arbitration Award is denied.
The Application to Approve the Arbitration Award is granted.
The Court CT Page 9733
By Curran, J.