[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Toni Stabile, has filed a sixteen count third revised complaint alleging bad faith, breach of contract, violation of the Connecticut Unfair Insurance Practices Act (CUIPA), violation of the Connecticut Unfair Trade Practices Act (CUTPA), negligence and recklessness against the defendants Southern Connecticut Health Systems, Inc. (SCHS), Bridgeport Hospital, Risk Management Planning Group, Inc. (Risk Management) and Paul C. Higgins, Inc.
The revised complaint alleges the following. On June 8, 1993, the plaintiff fell while working at Bridgeport Hospital, a subsidiary of SCHS. She suffered injuries, lost wages, and incurred medical expenses. SCHS and Bridgeport Hospital are self-insured, and as an employee of Bridgeport Hospital the plaintiff was entitled to workers' compensation benefits. The plaintiff filed a notice of claim for such benefits. The defendants agreed to pay benefits, but subsequently refused. This resulted in an injury caused by the plaintiff's fall becoming permanent. The plaintiff also alleges that Risk Management and Paul C. Higgins, Inc. were third party administrators for Bridgeport Hospital and SCHS.
SCHS and Bridgeport Hospital have filed a motion to strike[1] counts one through five and sixteen, which allege bad faith, breach of contract, violation of CUIPA and CUTPA,[2]
CT Page 8715 negligence and recklessness, on the grounds that the plaintiff has not alleged that she has received a workers' compensation award in her favor, that CUIPA does not provide a private cause of action, and that the plaintiff is not a party to an insurance contract.
Risk Management has filed a motion to strike counts six through ten, which allege recklessness, breach of contract, violation of CUIPA and CUTPA, and negligence, on the grounds that a similar motion has already been granted, that the plaintiff has not alleged that an award has been granted, that CUIPA does not provide a private cause of action, and that the plaintiff is not a party to a contract of insurance.
 I
Because SCHS and Bridgeport Hospital, and Risk Management have each filed motions to strike the same claims on the same grounds, the court will address the motions to strike together. Risk Management first contends that a motion to strike on identical grounds was already granted by the court (Ford, J.). However, Judge Ford's memorandum of decision reflects that he granted the motion to strike based on the plaintiff's failure to include a separate prayer for relief; the motion was not granted based on grounds raised by the motions to strike here. Therefore, that prior decision does not provide any "law of the case"; Breen v. Phelps, 186 Conn. 86,99, 439 A.2d 1066 (1982); relevant to the issue before the court, nor is the defendant's claim within the ambit of Roycev. Westport, 183 Conn. 177, 439 A.2d 298 (1981).[3]
 II
The defendants SCHS, Bridgeport Hospital and Risk Management next contend that all of the counts directed against them are legally insufficient because the plaintiff has failed to allege that a workers' compensation award was made in her favor. The plaintiff argues that the parties accepted the recommendations of the workers' compensation commission pursuant to General Statutes § 31-297a.[4]
Each of the plaintiff's counts are contingent upon the defendants having been legally obligated to pay workers' compensation benefits. Prior to 1988 "[t]here [were] only three ways to establish an employer's liability: first, by the CT Page 8716 employer's failure to contest liability within twenty days of receiving notice of the injury as required by General Statutes § 31-297(b); see Bush v. Quality Bakers of America, 2 Conn. App. 363,479 A.2d 820, cert. denied, 194 Conn. 804,482 A.2d 709 (1984), and cases cited therein; second, by the commissioner's approval of a written voluntary agreement entered into by the employer and employee pursuant to General Statutes § 31-296; and third, where the employer contests liability and the parties fail to reach an agreement, by the adjudication of the claim by the workers' compensation commissioner and the granting of an award to the plaintiff." (Footnote omitted.) Mora v. Aetna Life Casualty InsuranceCo., 13 Conn. App. 208, 212-13, 535 A.2d 390 (1988).
In 1988, the Legislature added a fourth vehicle by which an employee may establish compensability. That legislation, now codified as General Statutes § 31-297a, provides in relevant part that "[i]n any informal hearing held by the commissioner or chairman of the workers' compensation commission in regard to compensation under the provisions of this chapter, any recommendations made by the commissioner or chairman at the informal hearing shall be reduced to writing and, if the parties accept such recommendations, the recommendations shall be as binding upon both parties as an award by the commissioner or chairman."
The plaintiff has alleged in paragraph eleven of count one that "[t]he Defendants were obligated under the Workers' Compensation Act by . . . 31-297a to follow agreements which became orders of the Commissioner . . . ." Additionally, in paragraph thirteen of count six the plaintiff alleged that Risk Management "through its representatives and/or counsel agreed to abide by the recommendations of [the] Workers' Compensation Commissioner at Informal Hearings and under the Connecticut Workers' Compensation Act knew that said agreements were binding upon it, yet failed subsequent to the hearings to follow its agreement . . . ."
However, the plaintiff has not alleged that any recommendations of the commissioner were reduced to writing.[5]
If the recommendations were not reduced to writing then the agreement is not binding upon the parties as an award of the commissioner under § 31-297a. The plaintiff has not sufficiently alleged the existence of a workers' compensation award in her favor. CT Page 8717
The plaintiff asserts that this argument does not address the plaintiff's claims of negligence against the defendants. However, the allegations of the plaintiff's negligence claims also depend upon whether the defendants were obligated to provide workers' compensation benefits, and, as discussed supra, the plaintiff has not sufficiently alleged an obligation owed by the defendants pursuant to an award.
 III
The defendants next contend that the plaintiff's claims of CUIPA violations are legally insufficient because CUIPA does not provide for a private right of action. The defendants further argue that both the CUIPA and CUTPA claims are legally insufficient because the plaintiff is a third party and not an insured under the workers' compensation policy.
The Connecticut Supreme Court to date has not determined whether CUIPA provides for a private right of action.Napoletano v. Cigna Healthcare of Connecticut, Inc., 238 Conn. 216,221 n. 5, 680 A.2d 127 (1996); Lees v. Middlesex InsuranceCo., 229 Conn. 842, 847 n. 4, 643 A.2d 1282 (1994). Superior Court decisions have long been divided on the issue.[6]
In Napoletano v. Cigna Healthcare of Connecticut, Inc.,
supra, 238 Conn. 249-50, the Supreme Court for the first time applied a modified version of the multi-tier test of Cort v.Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a private remedy is implicit in a statute not expressly providing one. Quoting Cort v. Ash, supra, theNapoletano court stated: "`In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . .? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?'" Because Napoletano was decided subsequent to the superior court decisions addressing whether a private cause of action may be implied in CUIPA, this court will revisit the issue. Before doing so, however, some preliminary comments are appropriate with respect to the modified Cort v. Ash test and the doctrine of implied causes of action CT Page 8718 generally. I respectfully do this because I am convinced that the Supreme Court improvidently adopted Cort v. Ash inNapoletano and because that court has recently afforded trial judges the license to critically comment on established precedent. Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184,195 n. 15, 676 A.2d 831 (1996).
 A
First, the modified Cort v. Ash test arose in theNapoletano opinion with seeming spontaneity. The court did not address the propriety of the implied cause of action doctrine in Connecticut nor did it reference prior pronouncements by the Court concerning it. See, e.g., Antimerella v. Rioux,229 Conn. 479, 495-97, 642 A.2d 699 (1994) (Public policy of General Statutes §§ 6-36 and 6-46, authorizing removal of high sheriff who engages in fee splitting affords deputy sheriff-victim a private cause of action for damages to which sovereign immunity is not a defense); O G Industries, Inc.v. New Milford, 229 Conn. 303, 640 A.2d 110 (1994) (Subcontractor does not have private cause of action against town where town fails to secure a payment bond from general contractor on municipal project pursuant to General Statutes §49-41); Middletown v. Hartford Electric Light Co., 192 Conn. 591,473 A.2d 787 (1984) (no implied cause of action for failure to obtain EPA approvals and permits given the pervasive regulatory powers of DEP over licenses). TheNapoletano court simply quotes the modified Cort v. Ash test and proceeds to apply it.[7]
Second, Cort v. Ash is no longer the law even in the federal courts. While the United States Supreme Court has occasionally continued to make reference to "the four factorCort test"; see, e.g., Wilder v. Virginia Hospital Assn.,496 U.S. 498, 508 n. 9, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); the Court soon after Cort v. Ash recognized that "[t]he question of the existence of a[n] [implied] statutory cause of action is, of course, one of statutory construction." Touche Ross Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 479,61 L.Ed.2d 82 (1979); see Suter v. Artist M., 503 U.S. 347, 364,112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) ("The most important inquiry here . . . is whether Congress intended to create the private remedy sought by the plaintiffs."); Virginia Bankshares, Inc.v. Sandberg, 501 U.S. 1083, 1085, 111 S.Ct. 2749,115 L.Ed.2d 929 (1991) ("[a]ny private right of action for violating a CT Page 8719 federal statute must ultimately rest on congressional intent to provide a private remedy."); id., 1102; Karahalios v.Federal Employees, 489 U.S. 527, 532, 109 S.Ct. 1282,103 L.Ed.2d 539 (1989) ("Such a claim poses an issue of statutory construction: The `ultimate issue is whether Congress intended to create a private cause of action. . . .'"); Bowen v.Massachusetts, 487 U.S. 879, 906 n. 42, `08 S.Ct. 2722,101 L.Ed.2d 747 (1988) ("The touchstone here, of course, is whether Congress intended a cause of action that it did not expressly provide."); Thompson v. Thompson, 484 U.S. 174, 179,108 S.Ct. 513, 98 L.Ed.2d 512 (1988) ("In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute."). The Court has tended to minimize the importance of Cort
without expressly overruling it, explaining that "[i]t is true that in Cort v. Ash, the Court set forth four factors that it considered `relevant' in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in Cort — the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78 — are ones traditionally relied upon in determining legislative intent." Touche Ross Co. v. Redington, supra, 442 U.S. 575-76; see also Thompson v. Thompson, supra, 484 U.S. 179 ("As guides to discerning that intent, we have relied on the four factors set out in Cort v. Ash . . . along with other tools ofstatutory construction." (Emphasis added.)); NorthwestAirlines, Inc. v. Transport Workers, 451 U.S. 77, 94 n. 31,101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) ("In a case in which neither the statute nor the legislative history reveals a congressional intent to create a private right of action for the benefit of the plaintiff, we need not carry the Cort v.Ash inquiry further."); Transamerica Mortgage Advisors, Inc.v. Lewis, 444 U.S. 11, 23, 100 S.Ct. 242, 62 L.Ed.2d 146
(1979) ("Relying on the factors identified in Cort v. Ash,422 U.S. 66, the respondent and the Commission, as amicus curiae,
argue that our inquiry in this case cannot stop with the intent of Congress, but must consider the utility of a private remedy, and . . . that it may be one not traditionally relegated to state law. We rejected the same contentions last Term in Touche Ross Co. v. Redington, where it was argued that these factors standing alone justified the implication of CT Page 8720 a private right of action . . . ."). As Justice Scalia has written: "It could not be plainer that we have effectively overruled the Cort v. Ash analysis in Touch Ross Co. v.Redington, [supra], and Transamerica Mortgage Advisers v.Lewis, [supra], converting one of its four factors (congressional intent) into the determinative factor, with the other three merely indicative of its presence or absence." (Emphasis in original.) Thompson v. Thompson, supra, 484 U.S. 189
(Scalia, J., concurring).
Third, since the "touchstone" of the issue as to whether a private right of action may be judicially implied into a state statute is whether the Legislature "intended a cause of action it did not expressly provide"; Bowen v. Massachusetts,
supra, 487 U.S. 912; the issue devolves into one of state law;Wisconsin v. Mitchell, 508 U.S. 476, 483, 113 S.Ct. 2194,124 L.Ed.2d 436 (1993); Garner v. Louisiana, 368 U.S. 157, 169,82 S.Ct. 248, 7 L.Ed.2d 207 (1961), Minotti v. Lensink, 798 F.2d 607,610 (2d Cir. 1986), cert. denied, 482 U.S. 906,107 S.Ct. 2484, 96 L.Ed.2d 376 (1986); the tradition of which in Connecticut is hostile to the very doctrine. "`In seeking to discern [legislative] intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ."' Stewart v. Tunxis ServiceCenter, 237 Conn. 71, 77, 676 A.2d 819 (1996). But "[w]hen the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature."Windham Taxpayers Assn. v. Board of Selectmen, 234 Conn. 513,532, 662 A.2d 1281 (1995). The long-standing, settled rule in this state is that where "the language of the statute is clear and unambiguous, courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for doing so." (Citations omitted.) Simko v. Zoning Board of Appeals,205 Conn. 413, 418, 533 A.2d 879 (1987), modified, 206 Conn. 374,538 A.2d 202 (1988). "At most, an implied limitation upon the operation of a statute may only be made in recognition of long existing and generally accepted rights (Kelley v. Killourey,81 Conn. 320, 322, 70 A. 1031 [1908]) or to avoid consequences so absurd or unreasonable that the Legislature must be presumed not to have intended them. Dorman v. Carlson, CT Page 8721106 Conn. 200, 203, 137 A. 749 [1927]; Jacobson v.Massachusetts, 197 U.S. 11, 39, 25 Sup. Ct. 358." State v.Nelson, supra, 126 Conn. 417. Consistent with these canons of statutory interpretation the Supreme Court has observed: "When the legislature has authorized supplementary private causes of action, it has generally done so expressly. See, e.g., General Statutes § 22a-16 (Connecticut Environmental Protection Act) and § 42-110g (a) (Connecticut Unfair Trade Practices Act)."Middletown v. Hartford Electric Light Co,. 192 Conn. 591, 596,473 A.2d 787 (1984); see also Holly Hill Holdings v. Lowman,30 Conn. App. 204, 220, 619 A.2d 853 (1993), affirmed on other grounds, 226 Conn. 748, 628 A.2d 1298 (1993).[8]
 B
Before analyzing whether CUIPA provides for an implied, private cause of action under Cort v. Ash, supra, the court notes that the record is unclear as to which unfair practice under CUIPA the plaintiff claims was violated. The parties have been content to hurl the acronym "CUIPA" about their respective pleadings without referring to any one of the seventeen subsections of General Statutes § 38a-816. Nonetheless, it is evident from a reading of the complaint as well as the briefs that the underlying unfair practice of which the plaintiff complains is an unfair claim settlement practice, as defined in General Statutes § 38a-816(6). Unlike the Connecticut Unfair Trade Practices Act which generally proscribes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"; General Statutes § 42-110b(a); limited by the admonition that "in construing subsection (a) . . . the courts . . . shall be guided by the interpretation given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)"; General Statutes § 42-110b(b); CUIPA contains a detailed enumeration and definition of the acts and practices within its ambit.
General Statutes § 38a-815 provides in pertinent part that "[n]o person shall engage in this state in any trade practice which is defined in section 38a-816 as . . . an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. . . ." General Statutes § 38a-816 provides in relevant part: "The following are defined as unfair methods of competition and unfair and CT Page 8722 deceptive acts or practices in the business of insurance . . . (6) Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following . . . (f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds . . . ."
"[B]ound by Supreme Court precedent"; Jolly, Inc. v.Zoning Board of Appeals, supra, 237 Conn. 195; this court now will proceed to apply the three-part test of Cort v. Ash to CUIPA, General Statutes §§ 38a-815, 38a-816 (6).
The first tier of the Cort v. Ash test as adopted by the Supreme Court in Napoletano v. Cigna Healthcare ofConnecticut, Inc., supra, 238 Conn. 249-250, is whether the plaintiff is "one of the class for whose . . . benefit the statute was enacted. . . .?" Id., 249. The court is persuaded that she is. CUIPA benefits claimants such as the plaintiff by prohibiting a variety of business practices which disadvantage claimants. The intent of the legislation was to protect the consumer. See 16 (H-134) H.R. Proc., Pt. 4, 1973 Sess., pp. 1567-1571; 16 (S-92) Senate Proc., Pt. 3, 1973 Sess., pp. 1213-1220; 22 H.R. Proc., Pt. 19, 1979 Sess., p. 6724 (Remarks of Rep, McManus): 29 (H-446) H.R. Proc., Pt. 22, 1986 Sess., pp. 3699 (Remarks of Rep. Richard Tulisano); 29 (S-256) Senate Proc., Pt. 1986 Sess., pp. 2708-2710 (Remarks of Rep. Schoolcraft).
The second inquiry under Cort v. Ash is whether there is "any indication of legislative intent, explicit or implicit, either to create a remedy or to deny one?" Napoletano v. CignaHealthcare of Connecticut, Inc., supra, 238 Conn. 249. There is no explicit indication in the text of General Statutes §38a-816 (6) of an intention to create or deny a private remedy. As for an implicit indication of legislative intent, this has been held not to implicate the panoply of principles of statutory construction but, rather, "requires consideration of legislative history." Cannon v. University of Chicago,441 U.S. 677, 694, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); seeNapoletano v. Cigna Healthcare of Connecticut, Inc., supra,238 Conn. 249. CT Page 8723
The court has painstakingly exercised its non-delegable responsibility of carefully studying the considerable legislative history of CUIPA as that act has been amended from time to time.[9] There is no indication of a legislative intent in that history to create a private cause of action. However, when the multi-tier Cort v. Ash test still determined whether a private cause of action would be read into a federal statute, the United States Supreme Court cautioned: "We must recognize, however, that the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question. Therefore, in situations . . . `in which it is clear that [astatute] . . . has granted a class of persons certain rights,
it is not necessary to show an intention to create a private cause of action, although an explicit purpose to deny such cause of action would be controlling.' Cort,422 U.S., at 82. . . . " (Emphasis added.) Cannon v. University of Chicago,
supra, 441 U.S. 694.
Whether a statute was intended to benefit a class of persons — the first tier of the Cort v. Ash test — is a far different question than whether the statute has granted members of that class of persons certain rights. See generally, Board of Regents v. Roth, 408 U.S. 564,92 S.Ct. 2701, 33 L.Ed.2d 548 (1974). In speaking of the cases in which it was clear that a statute had granted a class of persons certain rights, the court in Cort v. Ash pointed to J.I. CaseCo. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423
(1964), and Bivens v. Six Unknown Federal Narcotics Agents,403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
In J.I. Case Co. v. Borak, supra, 377 U.S. 426, the defendant stockholder of plaintiff company brought a class action in federal court for deprivation of his and other stockholders' pre-emptive rights by reason of a merger involving the company, allegedly effected through use of a false and misleading proxy statement in violation of § 14(a) of the Securities Exchange Act of 1934. That statute, codified as 15 U.S.C. § 78n (a), then provided: "It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an CT Page 8724 exempted security) registered on any national securities exchange in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." Id., 427 n. 1. The district court held that it had no power to redress the alleged violations of the Act but was limited solely to the granting of declaratory relief. Id., 427-428. The issue before the United States Supreme Court was whether the defendant had a right to bring a private cause of action for damages under that statute. The Court held that he did, noting that Section 27 of the Act,48 Stat. 902-903, 15 U.S.C. § 78aa, conferred such a right.[10]
Id., 430-431. Apparently even apart from 15 U.S.C. § 78aa, the Court stated: "We . . . believe that under the circumstances here it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." Id., 433.
In Bivens v. Six Unknown Federal Narcotics Agents, supra,403 U.S. 397, the United States Supreme Court implied a federal cause of action against federal agents "to recover money damages for any injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment" to the United States Constitution which provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Distilled to its essence Bivens was an exercise of judicial fiat, providing a remedy for an explicit constitutional right as a matter of federal common law. Boylev. United Technologies Corp., 487 U.S. 500, 517 n. 2,108 S.Ct. 2510, 101 L.Ed.2d 442, reh. denied, 489 U.S. 1047
(1988).
In Cannon v. University of Chicago, supra, 441 U.S. 677
the United States Supreme Court, following the analysis laid down in Cort v. Ash four years earlier, held that a private cause of action was implied in Section 901(a) of Title IX of the Education Amendments of 1972. That statute provided in part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." Id., 682 n. 3. The court reasoned that "Title IX was patterned after Title VI of the Civil Rights Act of 1964. Except for the substitution of the word `sex' in CT Page 8725 Title IX to replace the words `race, color, or national origin' in Title VI, the two statutes use identical language to describe the benefited class. Both statutes provide the same administrative mechanism for terminating federal financial support for institutions engaged in prohibited discrimination. Neither statute expressly mentions a private remedy for the person excluded from participation in a federally funded program. The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years." (Footnotes omitted.) Id., 694-696. Since The Court, prior to the enactment of Title IX, had interpreted Title VI as implying private causes of action for discrimination based on race, color or national origin, the Court held that Congress intended that Title IX would be similarly interpreted.
Unlike the statutes in question in Cannon, Borak, andBivens, General Statutes §§ 38a-815, 38a-816(6) neither confer any rights nor prohibit any individual act or omission. Rather, those statutes prohibit "[c]ommitting or performingwith such frequency as to indicate a general businesspractice" the proscribed acts or omissions. (Emphasis added.) Since General Statutes §§ 38a-815, 38a-816(6) do not grant a class of persons rights, the rule stated in Cort and Cannon
making it unnecessary to show an intention to create a private cause of action under such statutes is inapplicable. We are left with a case in which neither the statute nor the legislative history reveals a legislative intent to create a private right of action for the benefit of the plaintiff.[11]
The third tier of the Cort v. Ash test, and the final tier under Napoletano v. Cigna Healthcare of Connecticut,Inc., supra, 238 Conn. 249, is whether it is consistent with the underlying purposes of the legislative scheme to imply a private right of action for the plaintiff. The court concludes that it is not for four reasons.
First, in Napoletano v. Cigna Healthcare of Connecticut,Inc., supra, 238 Conn. 251, the court stated that "where the legislature wishes to limit enforcement of a statute to an administrative body, it has expressly done so." Here, the legislature has done so. The only person expressly authorized by the legislature to take action against a person allegedly committing an insurance practice is the insurance commissioner, pursuant to General Statutes § 38a-817.[12] The CT Page 8726 commissioner may serve such persons with a notice of charges and with a notice for a hearing to be held thereon. "If, after such hearing, the commissioner determines that the person charged has engaged in an unfair method of competition or an unfair or deceptive act or practice, he shall reduce his findings to writing and shall issue and cause to be served upon the person charged with the violation a copy of such findings and an order requiring such person to cease and desist from engaging in such method of competition, act or practice and if the act or practice is a violation of section38a-816, the commissioner may at his discretion order any one or more of the following: (i) Payment of a monetary penalty of not more than one thousand dollars for each and every act or violation but not to exceed an aggregate penalty of ten thousand dollars unless the person knew or reasonably should have known he was in violation of section 38a-815, 38a-816, this subsection and subsection (e), in which case the penalty shall be not more than five thousand dollars for each and every act or violation but not to exceed an aggregate penalty of fifty thousand dollars in any six-month period; (ii) suspension or revocation of the person's license if he knew or reasonably should have known he was in violation of said sections and subsections." General Statutes § 38a-817(b). Any person aggrieved by such an order may appeal to the superior court. General Statutes § 38a-817(c).
Thus, the legislature, having defined what is an unfair insurance practice, has committed the enforcement of that chapter of the General Statutes to the insurance commissioner only. Enforcement against such practices is administrative only. The sanctions for committing an unfair or deceptive act or practice are defined and circumscribed. There is a right of appeal. General Statutes § 38a-817(d) does provide: "No order of the commissioner under sections 38a-815 to 38a-819, inclusive, shall relieve or absolve any person affected by such order from any liability under any other laws of this state." But this provision negating or limiting the collateral estoppel effect of a commissioner's order in no way is a grant of a cause of action to the private persons.
"We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one . . . [here]. As w[as] stated in Transamerica Mortgage Advisors, Inc. v. Lewis,444 U.S. 11, 19 (1979): "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of CT Page 8727 reading others into it." See also Touche Ross Co. v.Redington, 442 U.S. 560, 571-574 (1979). "The presumption that a remedy was deliberately omitted from a statute is strongest when [the legislature, as here,] has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." Northwest Airlines, Inc. v.Transport Workers, 451 U.S., at 97."
(Footnote omitted.) Massachusetts Mutual Life Ins. Co. v. Russell,473 U.S. 134, 147 (1985).
Second, a statutory scheme such as General Statutes §§38a-815, 38a-816(6), which prohibits certain acts or omissions, but only when committed "with such frequency as to indicate a general business practice", "does not readily lend itself to enforcement by a private cause of action arising from a single claim." O.K. Lumber v. Providence WashingtonIns., 759 P.2d 523, 527 (Alaska 1988) (holding that Alaska's Unfair Trade Practices Act does not contain an implied private cause of action). An award would not redound to the benefit of the class protected by CUIPA — those injured by the unfair business practice — but only to a single plaintiff in this non-class action lawsuit for a single transgression where a single transgression is not what the statute proscribes. Cf.Piper v. Chris-Craft Industries, 430 U.S. 1, 39 (1977).
Third, while the plaintiff here has alleged that the transgressions committed against her by the defendant Risk Management "manifest a general business practice", the spectacle of attorneys throughout the state subpoenaing countless claims adjusters, claims supervisors and insurance files into court in an effort to prove, or to threaten, a CUIPA claim would not comport with the legislative judgment to vest enforcement of CUIPA solely in the insurance commissioner, except where a claim may be also be proved under the Connecticut Unfair Trade Practices Act, General Statutes §42-110b et seq. Mead v. Burns, 199 Conn. 651, 509 A.2d 11
(1986). "The legislature may well have concluded that private interests were amply served, without private causes of action by affording access to private persons to the regulatory process by way of complaints"; Middletown v. Hartford ElectricLight Co., supra, 192 Conn. 596; to the insurance commissioner's division of consumer affairs. See General Statutes § 38a-9. CT Page 8728
Finally, in the present context of a refusal to pay workers compensation benefits, it would not be consistent with the legislative scheme to employ a private right of action because General Statutes § 31-300[13] provides for an award by the workers compensation commissioner of interest and attorney's fees if a claim for such compensation is unreasonably delayed, through the fault or neglect of the employer or insurer, or is unreasonably contested. See, e.g.,Imbrogno v. Stamford Hospital, 28 Conn. App. 113, 125,612 A.2d 82, cert. denied, 223 Conn. 920, 615 A.2d 507 (1992);Pokorny v. Getta's Garage, 22 Conn. App. 539, 542-43,579 A.2d 98 (1990), reversed on other grounds, 219 Conn. 439,594 A.2d 446 (1991). In addition, General Statutes § 31-288(b) provides: "Whenever (1) through the fault or neglect of an employer or insurer, the adjustment or payment of compensation due under this chapter is unduly delayed, or (2) either party to a claim under this chapter has unreasonably, and without good cause, delayed the completion of the hearings on such claim, the delaying party or parties may be assessed a civil penalty of not more than five hundred dollars by the commissioner hearing the claim for each such case of delay. Any appeal of a penalty assessed pursuant to this subsection shall be taken in accordance with the provisions of section31-301." "Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.)Bridgeport Hospital v. Commission on Human Rights Opportunities, 232 Conn. 91, 101, 653 A.2d 782 (1995). And "`[i]t is a well settled principle administrative law that a party may not bring a matter to the Superior Court without first exhausting available administrative remedies.'" Hyatt v.City of Milford, 26 Conn. App. 194, 197, 600 A.2d 5 (1991), appeal dismissed, 224 Conn. 441, 619 A.2d 450 (1993) (holding that the failure to exhaust another remedy within General Statutes § 31-300 implicated the exhaustion doctrine); see also Mora v. Aetna Life Casualty Ins. Co., supra, 13 Conn. App. 213;Coolick v. Windham, 7 Conn. App. 142, 148,508 A.2d 46 (1986). Moreover "`[i]t is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate; see, e.g., Connecticut Life Health Ins.Guaranty Assn. v. Jackson, [173 Conn. 352, 357, 377 A.2d 1099
(1977)]; and an administrative remedy, in order to be "adequate," need not comport with the plaintiffs' opinion of what a perfect remedy would be.' Connecticut Mobile HomeAssn., Inc. v. Jensen's, Inc., 178 Conn. 586, 590, CT Page 8729424 A.2d 285 (1979); see also Savoy Laundry, Inc. v. Stratford,32 Conn. App. 636, 630 A.2d 159, cert. denied, 227 Conn. 931,632 A.2d 704 (1993) (administrative remedies available to plaintiff under statute not inadequate, despite fact that complaint sought relief, including punitive damages and attorney's fees, not available under statutory scheme, where essence of plaintiff's claim involved matter within authority vested in administrative agency)." Hunt v. Prior, 236 Conn. 421,434-35, 673 A.2d 514 (1996).
"It is to state the obvious to report that the insurance industry is heavily regulated." Aetna Life Casualty Co. v.Braccidiferro, 34 Conn. App. 833, 847, 643 A.2d 1305 (1994), cert. granted, 232 Conn. 901, 918, 919, 651 A.2d 743 (1995); see Serrano v. Aetna Insurance Co., 233 Conn. 437, 453,664 A.2d 279 (1995). Regulation of the insurance industry in this state is "comprehensive". Aetna Life Casualty Co. v.Braccidiferro, supra. Regulatory schemes such as those contained in chapter 704 of the General Statutes dealing with "Unfair and Prohibited Practices" are a product of careful legislative balancing of various interests. Courts upset that balance when they override the informed choice of the General Assembly and "imply" a cause of action in regulatory schemes which the Legislature has not provided. Cf. Patterson v.McLean Credit Union, 491 U.S. 164, 189, 109 S.Ct. 2363,105 L.Ed.2d 132 (1989); Chrysler Corp. v. Brown, 441 U.S. 281,313, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); Metropolitan LifeIns. Co. v. Massachusetts, 471 U.S. 724, 751, 105 S.Ct. 2380,85 L.Ed.2d 728 (1985).
For these reasons this court holds that a private cause of action may not be implied in General Statutes §§ 38a-815,38a-816(6).[14]
 IV
Finally, the defendants maintain that Bridgeport Hospital is the insured, not the plaintiff, and the plaintiff may not bring a third-party action under CUIPA or CUTPA. The defendants rely upon Ciarleglio v. Fireman's Fund InsuranceCo., Superior Court, judicial district of Fairfield at Bridgeport, No. 276028 (1993).
In Ciarleglio Judge Fuller wrote that "[a]bsent clear legislative intent, the statutes should not be construed to CT Page 8730 create a new cause of action against an insurance company by a third party claimant without a judgment on the contested claim. . . . [T]here can be no cause of action against the insurer as long as the liability of the insured to the employee is still unresolved." Id. That is, a claim under CUTPA is dependent upon whether the plaintiff has sufficiently alleged that a workers' compensation award has been made in her favor. I have previously questioned Ciarleglio in the context of a motion to strike an action for bad faith which had been joined with a civil action for underinsured motorist benefits. See Kenny v. Nationwide Mutual Insurance Company,
Superior Court, Judicial District of Fairfield, No. 328574 (Jan. 24, 1996). In the present context, however, a CUTPA claim may not be maintained because adequate administrative remedies exist which have not been exhausted; see General Statutes §§ 31-288, 31-300; and because, as discussed supra, the plaintiff has not sufficiently alleged the existence of a workers' compensation award.
The defendants' motions to strike (#133 and #134) are granted.
BY THE COURT
Bruce L. Levin Judge of the Superior Court