[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE (#103)
 I. BACKGROUND
On October 13, 1998, the minor plaintiff, Jane Doe, by and through her natural father and legal guardian, John Doe, filed an amended two count complaint arising out of the alleged negligence of the defendants, the Voluntown Board of Education and Anthony Perrelli, superintendent of schools for Voluntown, Connecticut.
In count one, the plaintiff alleges that the defendant, the Voluntown Board of Education, was negligent and violated General Statutes § 10-214 regarding its responsibility to screen students in grades five through nine for postural scoliosis. The plaintiff alleges a similar negligence claim in count two against the CT Page 14254 defendant, Perrelli.
On February 17, 1999, the defendants filed a motion to strike both counts one and two of the plaintiff's complaint, and a memorandum of law in support. On April 27, 1999, the plaintiff filed an objection to the defendants' motion to strike and a memorandum of law in support. The defendants filed a supplemental memorandum in support of their motion to strike on May 26, 1999. The plaintiff then filed a supplemental memorandum in support of her objection to the defendants' motion to strike on July 7, 1999.
 II. DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). The court "must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Id.
As previously stated, the plaintiff alleges that the defendants were negligent and violated § 10-214 in fulfilling their requirements to screen students in grades five through nine for postural scoliosis. Specifically, the plaintiff alleges that the defendant failed or refused to comply with § 10-214(c), which required local boards of education to screen students in grade five in 1995 and each year from grades five through nine beginning in 1996 for scoliosis. According to the plaintiff, the defendants failed or refused to conduct said screenings on the minor plaintiff's classes during the school years 1995 through 1996 and 1996 through 1998. On April 29, 1997, the minor plaintiff was diagnosed by her private pediatrician as suffering from double major scoliosis. The plaintiff has allegedly suffered great physical pain and mental anguish, as well as economic damages as a result of this diagnosis. Furthermore, the plaintiff asserts that the defendants' failure to conduct postural screenings for scoliosis on her resulted in her condition gradually worsening over time, such that when finally discovered, the physical condition, injuries sustained and damages to her CT Page 14255 were greater and necessitated more extensive treatment than would have been required if discovered earlier.
The defendants move to strike counts one and two on the ground that § 10-214(c) does not provide a private right of action. Additionally, the defendants move to strike count one on the ground that the plaintiff's claim is barred by the doctrine of governmental immunity. The defendants also move to strike count two on the ground that the plaintiff's claim is barred by the public duty doctrine.
 A. A Private Right of Action Is Permitted Under § 10-214
General Statutes § 10-214 provides in relevant part: "(c) Each local or regional board of education shall provide annual postural screenings for each pupil in grades five to nine. The superintendent of schools shall give written notice to the parent or guardian of each pupil who evidences any postural problem, with a brief statement describing such evidence. (d) Test results or treatment provided as a result of the screenings pursuant to this section shall be recorded on forms pursuant to subsection (a) of section 10-206. (e) The State Board of Education, with the technical advice and assistance of the Department of Public Health, shall adopt regulations in accordance with the provisions of chapter 54 for screenings pursuant to this section." General Statutes § 10-214.
In support of their motion to strike, the defendants argue that § 10-214 does not provide for a private cause of action. The defendants contend that since there is no express provision regarding a private cause of action provided in § 10-214 for an alleged failure to conduct the mandatory scoliosis screenings, the plaintiff should not be permitted to bring the present action. The plaintiff argues that although § 10-214 does not expressly provide for a private cause of action, it does not prohibit them. Thus, the plaintiff contends that she should be permitted to proceed with the present action.
"When the legislature has authorized supplementary private causes of action, it has generally done so expressly." Middletownv. Hartford Electric Light Co., 192 Conn. 591, 596, 473 A.2d 787
(1984). "`In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . .? Second, is CT Page 14256 there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?' (Citations omitted; internal quotation marks omitted.) Cort v. Ash, 422 U.S. 66, 78,95 S.Ct. 2080, 45 L.Ed.2d (1975)." Napoletano v. CIGNAHealthcare of Connecticut, Inc., 238 Conn. 216, 249-50,680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S.Ct. 1106,137 L.Ed.2d 308 (1997).
Since there is no express language in § 10-214(c) providing for a private cause of action, this court must examine the facts of this case under the test adopted in Napoletano v. CIGNAHealthcare of Connecticut, Inc., supra, 238 Conn. 249-50. First, the court must determine whether the plaintiff is one for whose benefit the statute was enacted. Clearly, the statute is meant to directly benefit children enrolled in school grades five through nine. The statute benefits this class by mandating that "[e]ach local or regional board of education shall provide annual postural screenings for each pupil in grades five through nine." General Statutes § 10-214(c). The statute further requires that "[t]he superintendent of schools shall give written notice to the parent or guardian of each pupil who evidences any postural problem, with a brief statement describing such evidence." Id. The scoliosis screening and written notice to the parent or guardian clearly benefits the minor plaintiff in this case because any potential postural problem noted by the school nurse would be identified and brought to the attention of the family, resulting in immediate care and treatment of any postural condition. This is especially important in the case of an initial diagnosis of scoliosis because it has been proven that early detection and treatment saves the patient time, money, and pain. There is no doubt that the plaintiff qualifies as a member of the class meant to be protected by the statute.
Second, this court does not find any indication, explicit or implicit, in the legislative history that the legislature intended to either create or to deny a private cause of action. "[T]he touchstone of the issue as to whether a private right of action may be judicially implied into a state statute is whether the legislature intended a cause of action it did not expressly provide. . . ." (Citations omitted; internal quotation marks omitted.) Stabile v. Southern Connecticut Hospital Systems, Inc., Superior Court, judicial district of Fairfield, Docket No. 326120 (October 31, 1996, Levin, J.) (18 Conn. L. Rptr. 157, 159). CT Page 14257 "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Meadows v. Higgins,249 Conn. 155, 162, ___ A.2d ___ (1999). "When the words of a statute are unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature." (Internal quotation marks omitted.) WindhamTaxpayers Assn. v. Board of Selectmen, 234 Conn. 513, 532,662 A.2d 1281 (1995).
In the present case, the words of the statute are silent as to whether the legislature intended to permit a private cause of action. The legislature has, however, included language expressly shielding municipalities and their employees from liability in other statutory sections dealing with education. For example, §10-204a mandates that local and regional school boards of education shall require each child to be protected by adequate immunization against certain diseases and childhood illnesses.[1] Section 10-204c, however, expressly limits liability of the municipality, by providing that: "No municipality, district health department or local or regional board of education which causes an immunization required by state law to be administered shall be liable for civil damages resulting from an adverse reaction to a nondefective vaccine." General Statutes § 10-204c. As such, if the legislature did not intend to permit private civil actions pursuant to § 10-214(c), it presumably would have included express language in the statute.
Third, providing a private cause of action to the minor plaintiff in this case is consistent with the underlying purposes of § 10-214. One obvious purpose of the statute is to provide a mechanism for early detection of scoliosis. The legislative history clearly demonstrates that the legislature deemed it necessary to adopt a longer scoliosis screening requirement for children in a particular grade range, primarily because they are at the greatest risk for developing scoliosis. "If undetected, it tends to become gradually more severe and can lead to a handicapping deformity. Screening for it is relatively simple by a health professional with appropriate training. It would be CT Page 14258 useful for all children to be screened in school, and for those who are found to have signs of scoliosis to be referred for orthopedic help. " Testimony submitted to the Public Health Committee, March 12, 1996, Sess., p. 1742, written statement of Martha F. Leonard, M.D., Chairman of Government Liaison Committee of the Connecticut Chapter of the American Academy of Pediatrics.
"This screening for scoliosis is one when it's not caught early enough can cause extreme [damage] to young people's backs and really [inhibit] their way of living. I think it's extremely important that we extend the time that the testing is done in the school system so we can catch it early." Statement of Rep. Frederick Gelsi, April 29, 1996 Sess., p. 3038. "Instead of just screening our children in grades five through eight, we're going to require that children be screened in our public schools in grades five through nine. This is necessary because all our children are different. Some of them go through growth spurts at various periods of time. . . . Fiscally it may cost a little bit more to make sure nurses see each school child every year. But in the long run, [t]he state will be better off." Statement of Sen. Kissel, May 8, 1996 Sess., p. 5104-05. This court is persuaded that under the criteria adopted in Napoletano v. CIGNA Healthcareof Connecticut, Inc., supra, 238 Conn. 249-50, a private cause of action exists under § 10-214(c).
In Napoletano v. CIGNA Healthcare of Connecticut, the plaintiff claimed, among other things, that although Public Act 94-235[2] contained no express language as to whether a private cause of action was permitted, such action was implied. After reviewing the facts of the case through the prism of the three part test promulgated in Cort v. Ash, 422 U.S. 66, 78,95 S.Ct. 2080, 45 L.Ed.2d (1975), the court held that despite the existence of any express language in the statute regarding a private right of action, the plaintiff was permitted to proceed. The court held that "[t]he absence of . . . express limitations in P.A. 94-235 supports our conclusion that the act permits a private cause of action." Id., 252. This court discerns from the legislative history that to effectuate fully the purposes of §10-214(c) of providing annual postural screenings to children in grades five through nine, and providing the parents with written notice should anything questionable be detected, "private interests [would not be] amply served without private causes of action." (Internal quotation marks omitted.) Id., 252. Since §10-214(c) does not provide a specific mechanism enabling private individuals to file grievances, private persons would be denied CT Page 14259 all access to the administrative enforcement process in the absence of a private cause of action. See also id. at 252.
In further support of their motion to strike, the defendants contend that unlike the facts of Napoletano v. CIGNA Healthcareof Connecticut, supra, an enforcement mechanism does exist for the plaintiff to utilize. The defendants rely on § 10-4b, which provides, in relevant part: "(a) Any resident of a local or regional school district, or parent or guardian of a student enrolled in the public schools of such school district who has been unable to resolve a complaint with the board of education of such local or regional school district may file with the State Board of Education a complaint in writing, or the state board may initiate a complaint, alleging the failure or inability of the board of education of such local or regional school district to implement the educational interests of the state in accordance with section 10-4a." General Statutes § 10-4b(a). Section 10-4a
defines "educational interests," and provides in relevant part: "[T]he educational interests of the state shall include, but not be limited to, the concern of the state that (1) each child shall have for the period prescribed in the general statutes equal opportunity to receive a suitable program of educational experiences; (2) each school district shall finance at a reasonable level at least equal to the minimum expenditure requirement pursuant to the provisions of section 10-262j an educational program designed to achieve this end; (3) in order to reduce racial, ethnic and economic isolation, each school shall provide educational opportunities for its students to interact with students and teachers from other racial, ethnic, and economic backgrounds and may provide such opportunities with students from other communities; and (4) the mandates in the general statutes pertaining to education within the jurisdiction of the State Board of Education be implemented." General Statutes § 10-4a.
The innate purpose of § 10-204 is to resolve complaints that students and/or parents have regarding the failure of the local boards of education to implement an educational interest. There is nothing to suggest that the scoliosis screenings mandated by §10-214 are encompassed in the definition of "educational interests."
Lastly, the defendants urge this court to follow the reasoning utilized in two out of state cases dealing with a similar statutory provision. In Uhr v. East Greenbush CentralCT Page 14260School District, 246 App.Div.2d 37, 675 N.Y.S.2d 704 (1998) andGrindle v. Port Jervis Center School District, 118 App.Div.2d 830,500 N.Y.S.2d 314 (1986), the courts were concerned with New York's Education Law § 905[3], which mandates scoliosis screenings for school districts in New York. In both cases, the courts determined that the legislature did not intend to create a private right of action by virtue of the statute. The defendants fail to note, however, that New York Education Law § 905 contained express language excluding the school authorities in charge of conducting the examinations pursuant to that statute from civil liability, unlike § 10-214. As such, the cases are easily distinguishable.
This court is satisfied that had the legislature wanted to prohibit a private cause of action under § 10-214, it would have expressly said so. As such, this court finds that the plaintiff will be permitted to pursue the present cause of action pursuant to § 10-214(c).
Since this court finds that § 10-214(c) permits a private right of action, the court must now address the alternative grounds raised by the defendants in support of their motion to strike counts one and two of the plaintiff's amended complaint.
 B. Count One — Governmental Immunity
As previously stated, the plaintiff essentially alleges in count one that the defendant, Voluntown Board of Education, was negligent in failing to provide annual postural screenings for each pupil in grades five through nine, and in particular, for the minor plaintiff. The defendants move to strike this count on the ground that the claim is barred by the doctrine of governmental immunity.
"[I]t is the settled law of this state that a municipal corporation is not liable for negligence in the performance of a governmental function. . . . [The] court has previously stated that [a] municipality itself was generally immune from liability for its tortious acts at common law. . . ." (Citations omitted; internal quotation marks omitted.) Williams v. New Haven,243 Conn. 763, 766, 707 A.2d 1251 (1998). The Connecticut Supreme Court has "also recognized, however, that governmental immunity may be abrogated by statute. . . . Thus, the general rule developed in our case law is that a municipality is immune from liability for negligence [in the performance of a governmental CT Page 14261 function] unless the legislature has enacted a statute abrogating that immunity." (Citations omitted.) Id.
"The plaintiff must, therefore, cite to a statutory abrogation of governmental immunity in order to permit her claims directly against a municipality. See [Williams v. New Haven, supra, 243 Conn. 767]; see also Practice Book § 10-3(a) (`When any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number'). However, express reference to a statute within a pleading is directory, rather than mandatory. See Peerless Ins. Co. v.Tucciarone, 48 Conn. App. 160, 163 n. 3, 708 A.2d 611 (1998) (`Although it is not mandatory, we note the preferred manner of pleading is to identify specifically the number of the statute relied upon')." Anderson v. City of New London, Superior Court, judicial district of New London at New London, Docket No. 541273 (March 4, 1999, Hurley, J. Trial Referee).
The plaintiff in the present case does not cite to any statutory abrogation of governmental immunity in her complaint, however, the court and the defendants are aware that the plaintiff seeks to impose liability on the defendant school board pursuant to § 52-557n. See Plaintiff's Memorandum in Opposition to the Defendant's Motion to Strike, p. 4. Accordingly, the court will consider the liability of the defendant school board, if any, in light of § 52-557n. See Anderson v. City of New London, supra, Docket No. 541273.
The legislature has acted to limit governmental immunity in certain circumstances. Specifically, General Statutes § 52-557n
provides, in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance. . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion CT Page 14262 as an official function of the authority expressly or impliedly granted by law." General Statutes § 52-557n.
Accordingly, the defendant's liability in the present case hinges upon whether mandated postural screenings constitute a discretionary or a ministerial function. "Whether the acts complained of . . . were governmental or ministerial is a factual question which depends upon the nature of the act complained of."Gauvin v. New Haven, 187 Conn. 180, 186, 445 A.2d 1 (1982); see also Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 165,544 A.2d 1185 (1988). "Governmental acts are performed wholly for the direct benefit of the public and are supervisory in nature. . . . [M]inisterial acts are performed in a prescribed manner without the exercise of judgment or discretion. . . ." (Internal quotation marks omitted.) Elliot v. Waterbury,245 Conn. 385, 411, 715 A.2d 27 (1998). Municipalities "are not immune . . . from liability for ministerial acts performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. . . . Thus, liability may attach for a negligently performed ministerial act, but not for a negligently performed . . . discretionary act." (Citation omitted; internal quotation marks omitted.) Romano v. Derby,42 Conn. App. 624, 629, 681 A.2d 387 (1996).
"`Connecticut appellate courts have previously approved the practice of deciding the issue of governmental immunity as a matter of law.' Kolaniak v. Board of Education,28 Conn. App. 277, 279, 610 A.2d 193
(1992)." Dantzler v. City of New London, Superior Court, judicial district of New London at New London, Docket No. 529726 (March 3, 1995, Hurley, J.).
In the present case, the local school boards were mandated by statute to provide annual postural screenings for each pupil in grades five through nine. See General Statutes § 10-214. Moreover, section 10-214-4 of the Regulations of Connecticut State Agencies provides a very detailed method by which such examinations are to be conducted.[4] Clearly, the legislature has dictated specifically what the local and regional school boards are required to do with respect to the mandatory annual postural screenings. This court finds that the duty imposed upon the local and regional school boards to conduct annual postural screenings for each pupil in grades five through nine is a ministerial function, since it is a requirement which is to be "performed in a prescribed manner without the exercise of CT Page 14263 judgment or discretion [as to the proprietary of the action]."Elliott v. Waterbury, supra, 245 Conn. 411. Accordingly, this court finds that count one of the plaintiff's complaint is not implicated by the doctrine of governmental immunity.
 C. Count Two — The Public Duty Doctrine
Lastly, in Count two, the plaintiff alleges that the defendant, Anthony Perrelli, superintendent of schools for Voluntown, was negligent in failing to administer annual postural screenings to each pupil enrolled in grades five through nine, and the plaintiff in particular. The defendants move to strike this count on the ground that it is barred by the application of the public duty doctrine.
"Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. . . . The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . [T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . ." (Citations omitted; internal quotation marks omitted.) Purzycki v.Fairfield, 244 Conn. 101, 107-08, 708 A.2d 937 (1998).
In addition to the partial abrogation of the doctrine of governmental immunity noted previously, the Connecticut Supreme Court has also adopted the "public duty doctrine," which provided even more immunity to public officials. "If the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages. . . ." (Citations omitted; internal quotation marks omitted.) Gordon v. Bridgeport Housing Authority, supra,208 Conn. 166.
"[T]he public duty doctrine provides the starting point of the analysis" with regard to the question of municipal liability. CT Page 14264 Id., 170. Thus, "the court looks to see whether there is a public or private duty alleged by the plaintiff." Id. "In the application of [the public duty doctrine,] the problem is always to determine whether the [action] involved does create a duty to the individual. . . . [I]t appears that the test is this: If the duty imposed on the public official . . . is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the [action] is one which imposes upon the official a duty to the individual, and if the official is negligent in the performance of that duty, he is liable to the individual." (Internal quotation marks omitted.) Roman v. Stamford, 16 Conn. App. 213,220, 547 A.2d 97 (1988).
In the present case, the plaintiff has alleged a private duty. Counts one and two of the plaintiff's complaint plainly allege that the school board and superintendent breached a private duty owed to her, in that they: (1) failed to provide annual postural screenings for each pupil in grades five through nine, in violation of § 10-214 (c); (2) failed to record test results or treatment provided as a result of the screening on the forms provided by § 10-206, in violation of § 10-214 (d); (3) failed to educate and train employees such that a proper, adequate and appropriate postural screening program was carried out to protect the students in grades five through nine; (4) permitted or directed employees to ignore the requirements of §10-214, which requires annual postural screenings for students enrolled in grades five through nine; (5) failed to regularly inspect and review the work performance of its employees to see if annual postural screenings for students in grades five through nine were being conducted; (6) failed to warn the minor plaintiff and her parents that annual postural screening for students in grades five through nine were not being conducted; and (7) failed to take remedies to correct the unsafe practice that existed in failing to conduct annual postural screenings. See Complaint ¶ 8 (a) — (h). The performance or nonperformance of these statutory provisions clearly affect the school children in grades five through nine (as delineated in § 10-214 (c)), differently than they affect the general public. Since this court determines that the duty as alleged by the plaintiff is a private duty, the public duty doctrine does not bar the present action as to the defendant, Perrelli.
Even if, however, the court determined that the duty was a public duty, the public duty doctrine still would not bar the CT Page 14265 plaintiff from proceeding with this action. "Once it is determined that the duty involved in the present case is a public duty, the issue of municipal liability may also turn upon whether the specific act in issue was ministerial or discretionary."Roman v. Stamford, supra, 16 Conn. App. 221; Gordon v. BridgeportHousing Authority, supra, 208 Conn. 168-70, 181. Municipal liability for the breach of a public duty attaches "only if the act complained of is a ministerial act or [if] one of the narrow exceptions to discretionary acts applies." Gordon v. BridgeportHousing Authority, supra, 170.
As determined earlier, the duty to conduct annual postural screenings for students in grades five through nine is a ministerial duty. As such, the defendant Perrelli is not protected by the shield of the public duty doctrine. Even arguendo, should the court find that the duty imposed upon the superintendent was discretionary, rather than mandatory, the doctrine of governmental immunity still would not operate to protect the defendant since the plaintiff's claim falls within one of the noted exceptions to the notion of immunity for discretionary acts. "Our cases recognize three such exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) Purzycki v. Fairfield, supra,244 Conn. 108.
The only exception to the qualified immunity of a municipal employee for discretionary acts that is relevant to the present case is the exception permitting a tort action in circumstances of likely imminent harm to an identifiable individual. "We have construed this exception to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. . . . Moreover, we have established specifically that schoolchildren who are statutorily compelled to attend school, during school hours on school days, can be an identifiable class of victims." (Internal quotation marks omitted.) Id., 108-09. Under this analysis, governmental immunity would not bar the plaintiff from going forward, since there was an obvious risk to the defendant school board that if they failed to conduct the scoliosis examinations for the periods as CT Page 14266 prescribed by statute, that a student in grades five through nine could likely develop an undetected, undiagnosed case of postural scoliosis. The risk of harm to a student like the plaintiff in the present case, was also obvious, in that the purpose behind the yearly screenings is to diagnose cases of scoliosis early and proceed with the necessary treatment and to avoid unnecessary pain and suffering to the student. As such, even if this court were to determine that the duty to conduct mandatory postural screenings was a discretionary, rather than a ministerial function, an exception to the doctrine of governmental immunity permits the plaintiff to proceed with her cause of action.
 III. CONCLUSION
Because this court finds that § 10-214 (c) does not expressly or impliedly prohibit a private cause of action, the plaintiff will be permitted to proceed. Moreover, this court finds that the mandate for local and regional school boards to conduct annual postural screenings is a ministerial duty, as opposed to a discretionary function. Section 10-214 (c) of the General Statutes, as well as section 10-214-4 of the Regulations of Connecticut State Agencies, both provide guidance and standards under which the local school boards must comply. The act of conducting an annual postural screening is definitively explained, leaving only the issue of privacy during the test to the discretion of the local school boards. For the foregoing reasons, the defendants' motion to strike counts one and two are denied.
D. Michael Hurley, Judge Trial Referee