# CONNECTICUT POST LIMITED PARTNERSHIP *v.* SOUTH CENTRAL CONNECTICUT REGIONAL COUNCIL OF GOVERNMENTS ET AL.
## (AC 20206)

Foti, Zarella and Peters, Js.

Argued June 13—officially released September 19, 2000

*Ronald J. Cohen*, with whom was *Robert B. Flynn*, for the appellant (plaintiff).

*Joseph L. Rini*, for the appellees (named defendant et al.).

*Philip R. Pastore III*, deputy corporation counsel, with whom, on the brief, was *Thayer Baldwin, Jr.*, corporation counsel, for the appellee (defendant city of New Haven).

*Opinion*

PETERS, J. The city of New Haven has initiated planning for a controversial project to develop a new regional shopping mall adjacent to Interstate Route 95 at Long Wharf.[1] The issue in this case is whether the owner of a competing shopping mall in Milford, eight miles south on Interstate Route 95, has standing to challenge the validity of the approval of the Long Wharf plan by the regional planning commission. That approval determined only that the Long Wharf plan was in accord with the provisions of a previously adopted regional plan. As did the trial court, we conclude that the competing owner has not established the requisite standing, either on the basis of classical aggrievement or on the basis of statutory entitlement to raise environmental concerns.

The four count complaint of the plaintiff, Connecticut Post Limited Partnership,[2] alleged that the defendants,

---

[1] On February 26, 1999, the New Haven development commission and the Long Wharf Galleria, LLC, prepared a development plan for submission to the New Haven board of aldermen. Long Wharf Galleria, LLC, is a joint venture of New England Development and the Fusco Corporation. In this opinion we refer to the proposed project as the Long Wharf Mall.

[2] The plaintiff owns the Connecticut Post Mall, a shopping center located in Milford.

the south central Connecticut regional council of governments (council),[3] the south central regional planning commission (planning commission)[4] and the city of New Haven (city), had failed to conduct statutorily required development reviews in accordance with the standards set forth in General Statutes §§ 8-189,[5]

---

[3] The council is a development agency created pursuant to General Statutes § 4-124c, which authorizes the creation of "a regional council of elected officials . . . by ordinance of the legislative bodies of two or more towns, cities or boroughs . . . ." The members of the council are the elected officials of fifteen cities and towns in south central Connecticut. Although the plaintiff's complaint does not allege any direct wrongdoing by the council, we presume that the council has been named as a defendant because it has supervisory authority over the planning commission.

The complaint states, at the outset, that the plaintiff initiated this action because "of the failure of the Regional Planning Commission . . . of the South Central Connecticut Council of Governments . . . to comply with their clear statutory duty to determine whether . . . [the Long Wharf plan] is in accord with the regional plan of development for the South Central Connecticut Region . . . ."

[4] The planning commission is a development agency that, pursuant to General Statutes § 4-124o, must implement "the planning duties and responsibilities of a regional council of governments, including the making of a plan of development pursuant to section 8-35a . . . ." The planning commission reports to the council.

[5] General Statutes § 8-189 provides in relevant part: "Project plan. The development agency may initiate a development project by preparing a project plan therefor in accordance with regulations of the commissioner. The project plan shall include: (a) A legal description of the land within the project area; (b) a description of the present condition and uses of such land or building; (c) a description of the types and locations of land uses or building uses proposed for the project area; (d) a description of the types and locations of present and proposed streets, sidewalks and sanitary, utility and other facilities and the types and locations of other proposed site improvements; (e) statements of the present and proposed zoning classification and subdivision status of the project area and the areas adjacent to the project area; (f) a plan for relocating project-area occupants; (g) a financing plan; (h) an administrative plan; (i) a marketability and proposed land-use study or building use study if required by the commissioner; (j) appraisal reports and title searches; (k) a statement of the number of jobs which the development agency anticipates would be created by the project and the number and types of existing housing units in the municipality in which the project would be located, and in contiguous municipalities, which would be available to employees filling such jobs and (l) findings that the land and buildings within the project area will be used principally for industrial or

$8\text{-}191^6$ and $8\text{-}35a.^7$ The plaintiff sought declaratory, injunctive and mandamus relief.

The defendants moved to dismiss the complaint for lack of subject matter jurisdiction due to lack of standing to pursue its merits. See *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 595, 473 A.2d 787 (1984) (standing has jurisdictional implications); *Molitor* v. *Molitor*, 184 Conn. 530, 532–33, 440 A.2d 215 (1981) (same). The defendants claim that the plaintiff lacks standing, either as a matter of classical aggrievement or as a matter of statutory entitlement to raise environmental issues.

business purposes; that the plan is in accordance with the plan of development for the municipality adopted by its planning commission and the plan of development of the regional planning agency, if any, for the region within which the municipality is located; that the plan is not inimical to any statewide planning program objectives of the state or state agencies as coordinated by the Secretary of the Office of Policy and Management; that the project will contribute to the economic welfare of the municipality and the state; and that to carry out and administer the project, public action under this chapter is required. Any plan which has been prepared by a redevelopment agency under chapter 130 may be submitted by the development agency to the legislative body and to the commissioner in lieu of a plan initiated and prepared in accordance with this section, provided all other requirements of this chapter for obtaining the approval of the commissioner of the project plan are satisfied."

[6] General Statutes § 8-191 (a) provides in relevant part: "Adoption of plan. Before the development agency adopts a plan for a development project . . . (2) the regional planning agency, if any, for the region within which such municipality is located shall find that such plan is in accord with the plan of development for such region . . . ."

[7] General Statutes § 8-35a provides in relevant part: "Plan of development. Assistance to municipalities or other public agencies. Each regional planning agency shall make a plan of development for its area of operation . . . [that] will be beneficial to the area. Any regional plan so developed shall be based on studies of physical, social, economic and governmental conditions and trends and shall be designed to promote with the greatest efficiency and economy the coordinated development of its area of operation and the general welfare and prosperity of its people. . . . Such plan shall be designed to promote abatement of the pollution of the waters and air of the region. The plan of each region contiguous to Long Island Sound shall be designed to reduce hypoxia, pathogens, toxic contaminants and floatable debris in Long Island Sound. . . . "

After a hearing for the presentation of arguments, the court granted the motions to dismiss. In a careful and comprehensive opinion, the court concluded that the plaintiff lacked standing of any kind to pursue any of the counts of its complaint. The plaintiff has appealed from the judgment dismissing its complaint. The issues raised by the plaintiff are entitled to plenary appellate review because the court's judgment was based entirely on the legal inferences to be drawn from presently uncontested facts. *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163–64, 671 A.2d 813 (1996); *Taft* v. *Wheelabrator Putnam, Inc.*, 55 Conn. App. 359, 362, 742 A.2d 366 (1999), cert. granted on other grounds, 252 Conn. 918, 919, 744 A.2d 439, 440 (2000).

# I

## FACTUAL RECORD

To obviate the need for an evidentiary hearing, the parties stipulated that the standing issue would be resolved on the basis of five documents presented by the plaintiff, i.e., its complaint and the four supporting affidavits that it had filed in opposition to the defendants' motions to dismiss. The parties agreed, as the law requires, that the court should accept as true the factual allegations contained therein and that the court should consider all reasonable inferences to be drawn therefrom with a view to sustaining the validity of the complaint. See *Pamela B.* v. *Ment*, 244 Conn. 296, 308–309, 709 A.2d 1089 (1998); *Mahoney* v. *Lensink*, 213 Conn. 548, 567, 569 A.2d 518 (1990).

The court's memorandum of decision and the record describe the relevant facts. The plaintiff owns a shopping center that, because of its geographical proximity to Long Wharf, is at risk of economic damage if the city's Long Wharf project is implemented. A regional plan formulated between 1966 and 1968[8] recognized the

---

[8] General Statutes § 8-35a sets forth the issues that a regional plan must address. Although that statute was amended in 1991 by Public Acts 1991,

need for careful analysis of proposed shopping centers to assure that such centers meet comprehensive development objectives. This concern was reiterated in a more elaborate 1990 statement by the planning commission.[9] The regional plan expressly identifies the plaintiff's shopping center as "prosperous and stable." While the plaintiff has been privately financed, development of the Long Wharf Mall is expected to be subsidized by eighty-five million dollars in state and municipal spending.

The city asked the planning commission to approve the proposed Long Wharf plan as consistent with the existing regional plan. On December 10, 1998, the planning commission held a meeting at which it gave the requested approval.[10] The planning commission took this action without holding a public hearing, without permitting the plaintiff's intervention and without evaluating the potential impact of the Long Wharf plan on the economic or ecological development of the region. The various statutes cited by the plaintiff contain provisions that impose on the planning commission the duty, in some circumstances, to conduct studies and to prepare analyses with respect to the regional consequences of proposed municipal development projects. The planning commission did not undertake such studies or analyses before it approved the city's proposal.

II

STANDING BASED ON CLASSICAL
AGGRIEVEMENT

The basic principles of the law of standing are undisputed. "The fundamental aspect of standing . . . [is

No. 91-170, to include environmental issues, the regional plan was not amended to reflect these statutory changes.

[9] The plaintiff also cites a 1992 draft regional plan, but that plan, although approved by the planning commission, was never adopted by the council.

[10] At the meeting, counsel for the planning commission advised its members that it was not their function to review "a specific mall proposal or any of its details."

that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated. . . . The [underlying] requirements of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. . . . As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great." (Citations omitted; internal quotation marks omitted.) *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 612–13, 508 A.2d 743 (1986); *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 463–66, 673 A.2d 484 (1996); *Light Rigging Co.* v. *Dept. of Public Utility Control*, 219 Conn. 168, 173, 592 A.2d 386 (1991); *Maloney* v. *Pac*, 183 Conn. 313, 320–21, 439 A.2d 349 (1981).

A plaintiff that claims standing to pursue a cause of action must satisfy a two part standard. "[F]irst, the party claiming [standing] must successfully demonstrate a specific personal and legal interest in the subject matter of the decision . . . . Second, the party claiming [standing] must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . ." *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 158–59, 699 A.2d 142 (1997). In addition, with respect to the second part of the test, a party seeking recovery for an alleged statutory violation must show that it "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."[11]

---

[11] In light of the language in *Med-Trans of Connecticut, Inc.*, that a party must show that it "*arguably* [falls] within the zone of interests," we disagree with the defendants' assertion that a Connecticut plaintiff must establish that its interest "falls" (rather than "arguably" falls) within the zone of interests of the applicable statute. Contrary to the defendants' assertion, the repeated citations by our Supreme Court of United States Supreme Court decisions on standing demonstrate that the zone of interests test in

(Internal quotation marks omitted.) Id., 160; *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 343, 663 A.2d 1011 (1995).

Even if we were to agree with the plaintiff that it has a specific personal and legal interest in the planning commission's approval of the Long Wharf plan,[12] it must overcome insurmountable obstacles to establish that it has demonstrated a risk of cognizable injury. The critical problem for the plaintiff is that its position as a potential competitor of the Long Wharf Mall does not, per se, give it standing to challenge the validity of the planning commission's approval of the city's plan.[13] "Ordinarily, an allegation that a governmental action will result in competition harmful to the complainant's business would not be sufficient to qualify the complainant as an aggrieved person." *State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 301, 524 A.2d 636 (1987); *Northeast Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 297, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998).

The plaintiff argues, however, that it has standing in this case because its injury derives not from ordinary market forces but from unfair competition arising out

Connecticut does not differ from the federal test articulated in *Assn. of Data Processing Services Organizations, Inc.* v. *Camp*, 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970). See, e.g., *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, supra, 242 Conn. 160; *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, supra, 236 Conn. 466; *Ducharme* v. *Putnam*, 161 Conn. 135, 139, 285 A.2d 318 (1971).

[12] The defendants dispute even this much. They maintain that the risk of business impairment arising out of the Long Wharf plan is no greater for the plaintiff than it is for other business enterprises in the region. We need not address this issue.

[13] With respect to the issue of classical aggrievement, the parties have not addressed the issue of whether the applicable statutes were intended to create private causes of action to supplement the pervasive powers of the various regulatory agencies. This, too, is an aspect of standing. See *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 596.

of governmental action that will result in (1) redirection of existing sales away from the plaintiff to the Long Wharf Mall, (2) state and local subsidization of the development of the Long Wharf Mall and (3) exacerbation of traffic congestion on Interstate Route 95. The plaintiff relies principally on *State Medical Society*.

In *State Medical Society*, our Supreme Court held that a licensed physician had standing to contest the validity of an administrative action that enlarged the area of the body that fell within the practice of podiatry. *State Medical Society* v. *Board of Examiners in Podiatry*, supra, 203 Conn. 304. Such enlargement, the court held, could constitute unfair and illegal competition because it could constitute an illegal encroachment on the professional practice of the physician. Id., 304–305.

The holding of *State Medical Society* is, however, distinguishable from this case on the ground that the plaintiff physician in that case was a person who had been granted a governmental license to conduct his business. Such a license confers a property interest that has constitutional implications. See *Lewis* v. *Swan*, 49 Conn. App. 669, 679, 716 A.2d 127 (1998). A person in the position of the plaintiff in this case has no such property interest in protection from competition. The fact that the Long Wharf plan must be approved by a number of governmental agencies does not suffice to establish that planning commission approval in this case will result in unfair or illegal competition.[14]

We conclude, therefore, that, as a common-law matter, the plaintiff has failed to establish the kind of injury that is necessary to afford it standing to question the

[14] We agree with the defendants that the principles that determine what constitutes unfair competition for the purposes of standing have no relationship to the principles that define unfair practices under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The plaintiff's citation of cases such as *Sportsmen's Boating Corp.* v. *Hensley*, 192 Conn. 747, 474 A.2d 780 (1984) is, therefore, inapposite.

planning commission's approval directly. It is not enough that a new competitor would cause great economic injury to the plaintiff. See, e.g., *Whitney Theatre Co.* v. *Zoning Board of Appeals*, 150 Conn. 285, 288–89, 189 A.2d 396 (1963).

The plaintiff argues, however, that it has statutory standing to compel the planning commission to enforce §§ 8-189, 8-191 and 8-35a[15] because the plaintiff falls within the zone of interests to be protected or regulated by these statutes. We disagree.

"An existing competitor [is not automatically] within the zone of interests protected [by a regulatory statute and, therefore,] has no standing to raise claims as to the general fitness of an applicant." (Internal quotation marks omitted.) *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 104, 717 A.2d 1276 (1998), quoting *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, supra, 235 Conn. 344, 346.[16] The question is, rather, whether the language and the legislative history of the regulatory statute demonstrate that the legislature intended the governmental actor to take competitive concerns into account. *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, supra, 242 Conn. 165; *United Cable Television Services Corp.* v. *Dept.*

---

[15] For the text of these statutes, see footnotes 5, 6 and 7.

[16] The plaintiff attempts to distinguish *United Cable Television Services Corp.* by pointing out that "the licensing proceeding [in that case] merely authorized a competitor to provide services in the cable operator's franchise area." It argues that the present case is different because "the [planning commission] proceeding not only authorize[d] the construction and operation of the mall project, but . . . it also authorize[d] the extraordinary use of public money to create competition where none existed before." Such hyperbole is misplaced. As the defendants correctly note, nothing in the record suggests that the approval of the project as consistent with the regional plan had the effect of authorizing the mall's construction, operation or financing. The record does not even establish that approval was a necessary condition for going forward with the city's plan.

*of Public Utility Control,* supra, 235 Conn. 347; *Light Rigging Co.* v. *Dept. of Public Utility Control,* supra, 219 Conn. 177.

*Light Rigging Co.* is particularly instructive because it is a recent case recognizing a competitor's standing to challenge the granting of a governmental license. *Light Rigging Co.* v. *Dept. of Public Utility Control,* supra, 219 Conn. 176. Two factors were of significance in *Light Rigging Co.* First, in that case, each claimant who challenged the validity of the issuance of additional certificates was itself the holder of a motor carrier certificate. Id., 174. Second, the applicable statute, General Statutes (Rev. to 1985) § 16-286, expressly "requires the DPUC to consider 'the existing motor transportation facilities and the effect upon them of granting such certificate, [and] the public need for the service the applicant proposes to render' when determining whether to grant a certificate of public convenience and necessity." Id., 176.

Although the plaintiff operates its shopping mall in the same field of endeavor as would the Long Wharf Mall, concededly it is not itself a licensee to provide shopping or personal services. The plaintiff argues, nonetheless, that the statutory framework that governs planning commission approval of the Long Wharf plan sufficiently addresses competitive issues so that it too falls within these statutes' zone of interests.

One of the statutes on which the plaintiff relies is § 8-189.[17] That statute authorizes planning commission approval of a municipal development agency's project plan that meets statutory specifications. These specifications include such routine matters as identification of the property to be developed and of the contemplated uses of the developed property. The project plan also must attest that the project will conform to any applica-

---

[17] For text, see footnote 5.

ble regional plan and will contribute to the economic welfare of the municipality and the state.

We agree with the plaintiff that the manifest agenda of § 8-189 is the promotion of municipal and regional economic growth. Nonetheless, nothing in this section manifests legislative concern for the interests of individual competitors. Accordingly, we conclude that this statute does not assist the plaintiff's search for statutory standing.

The provisions of § 8-191 (a) (2),[18] on their face, are similarly unhelpful to the plaintiff's search for a basis for standing. All that section addresses is the authority of the planning commission to determine whether a municipal development project "is in accord with the plan of development for such region." General Statutes § 8-191 (a) (2). The section does not direct the planning commission to consider whether the project may cause injury to competitors.

The plaintiff reminds us, however, that both § 8-189 and § 8-191 (a) (2) expressly refer to a regional plan. The plaintiff argues that this language indicates a legislative intent to incorporate by reference the provisions of other sections, such as § 8-35a,[19] that describe the matters that a planning commission must address in formulating a regional plan.[20] Pursuant to § 8-35a, a regional plan "shall be based on studies of physical, social, economic and governmental conditions and trends and shall be designed to promote with the greatest efficiency and economy the coordinated development of its area of operation and the general welfare and prosperity of its people . . . ." To implement this objective, the 1966 regional plan expressly recognized the need

---

[18] For the text of § 8-191 (a) (2), see footnote 6.

[19] For the text of § 8-35a, see footnote 7.

[20] Subsequent amendments to § 8-35a have not been incorporated into the 1966 regional plan.

for careful analysis of proposed shopping centers to assure that such centers met comprehensive development objectives.[21] The regional plan described the plaintiff's shopping center as economically prosperous and stable.

The plaintiff maintains that, in light of this history, it falls within the zone of interests protected by the various statutes that pertain to the adoption and enforcement of the 1966 regional plan. We agree that these regulatory statutes manifest a regulatory concern to promote healthy competition as an important aspect of sound regional planning to promote regional economic growth.

We disagree, however, that a regulatory concern to promote competition is to be equated, for standing purposes, with a regulatory concern to protect the interests of individual competitors. The plaintiff has cited no case that squarely so holds, and we know of none. The cases that limit the standing of existing licensees to challenge the granting of a new license to a new competitor look the other way. It is self-evident that the granting of any such new license is likely to have an adverse economic impact on existing licensees. Nonetheless, unless the applicable statute expressly requires consideration of the interests of existing competitors; see *Light Rigging Co.* v. *Dept. of Public Utility Control,* supra, 219 Conn. 177; an existing licensee has no standing to question the wisdom of adding potentially competing service providers to the market place. See *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services,* supra, 242 Conn. 165; *United Cable Television Services Corp.* v. *Dept. of Public Utility Control,* supra, 235 Conn. 347.

---

[21] Although a subsequent 1990 statement by the planning commission elaborated on the special concerns associated with the development of new shopping centers, the plaintiff concedes that this statement was never adopted by the council. It is, therefore, irrelevant.

The decision of our Supreme Court in *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services,* supra, 242 Conn. 165, is especially germane. Pursuant to *Med-Trans of Connecticut, Inc.,* even if the regional plan had identified the interests of competitors, rather than of competition, as matters requiring regulatory attention, the regional plan could not supplant or supplement the language of the governing statutes. Id., 167.

For the reasons described above, we conclude that the plaintiff does not have standing, under the principles of classical aggrievement, to challenge the approval of the Long Wharf plan by the planning commission. The court's judgment with respect to this issue must be affirmed.

### III

### STANDING BASED ON THE CONNECTICUT ENVIRONMENTAL PROTECTION ACT

Even if it cannot prove classical aggrievement, the plaintiff claims that the provisions of General Statutes § 22a-16[22] afford it standing to pursue a challenge to the validity of the planning commission's approval of the Long Wharf plan with respect to environmental issues such as air and water pollution. Although the complaint does not allege a violation of any provision of the Environmental Protection Act (EPA), General Statutes § 22a-1 et seq., the plaintiff maintains that § 22a-16 confers upon it standing to enforce the environmental implications of the other regulatory statutes that it has invoked. We disagree.

---

[22] General Statutes § 22a-16 provides in relevant part: "Action for declaratory and equitable relief against unreasonable pollution. . . . [A]ny person . . . may maintain an action . . . for declaratory and equitable relief against . . . any instrumentality or agency of the state or of a political subdivision thereof . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

At trial, the court rejected, on two grounds, the plaintiff's claim for environmental standing. It concluded that the applicable statutes did not authorize the plaintiff's pursuit of such a claim. In addition, it concluded that pursuit of environmental claims was premature at this preliminary stage of administrative proceedings concerning the validity of the Long Wharf plan. We agree that the plaintiff has not established its right to invoke environmental standing.

With respect to statutory authority to pursue environmental claims, both parties rely on the opinion of the Connecticut Supreme Court in *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 596–97. That court stated that "invocation of the EPA is not an open sesame for standing to raise environmental claims with regard to any and all environmental legislation. . . . [Section] 22a-19 of the EPA, which permits any person, on the filing of a verified pleading, to intervene in any administrative proceeding and to raise therein environmental issues must be read in connection with the legislation which defines the authority of the particular administrative agency. Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues." (Citation omitted; internal quotation marks omitted.) Id., 597. The opinion applied the limitation on environmental standing previously articulated in *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 250–51, 470 A.2d 1214 (1984).

The defendants read *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 591, as limiting environmental standing under § 22a-16 to claims arising under the EPA itself. The opinion is not that broad.

The right to invoke environmental standing depends on whether the asserted environmental claim falls within the statutory jurisdiction of the particular gov-

ernmental agency authorized to adjudicate such a claim. As the court explained in *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 591, inland wetlands agencies are not authorized to consider possible air pollution arising from the dispersal of toxic substances.

In this case, we conclude that the plaintiff's assertion of environmental standing cannot be sustained because the plaintiff has failed to identify any statute that confers on the planning commission the authority to consider environmental issues as a prerequisite to planning commission approval of a municipal project as being in accord with an existing regional plan. It may well be that the plaintiff's complaint may invoke environmental standing to challenge future decisions by the planning commission or other governmental actors concerning the viability and the propriety of the Long Wharf plan as it is finally configured. The plaintiff does not, however, have such standing now.[23]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[23] Our conclusion overlaps with the court's determination that, independent of statutory authority, the plaintiff's claim for environmental standing is premature. We need not discuss whether the principles of finality expressed in the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., would bar the plaintiff's action in this case under title 8 of the General Statutes. We lack a factual predicate for adjudicating the defendants' invocation of the doctrine of primary jurisdiction, because the record does not establish what other reviews the Long Wharf plan is currently undergoing.