[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS OF STATE TRAFFIC COMMISSION
The State Traffic Commission ("Commission") has moved to dismiss the above-captioned administrative appeal on the ground that the plaintiff has not pleaded facts sufficient to establish standing to appeal, and that this court therefore lacks jurisdiction.[1] The plaintiff, The Connecticut Post Limited Partnership ("Connecticut Post") asserts that its pleadings are sufficient to allege standing either on the basis of classical aggrievement or by virtue of statutory authority pursuant to § 22a-19 (a) of the Connecticut Environmental Protection Act of 1971, Conn. Gen. Stats. §§ 22a-14, et seq. ("EPA").
The administrative action that is the subject of this appeal is the approval by the Commission of an application for a certificate pursuant to Conn. Gen. Stat. § 14-311 (a) concerning a shopping mall which Long Wharf Galleria, LLC ("Long Wharf") seeks to develop near the intersections of Interstate routes 91 and 95 and state highway Route 34 in New Haven. Section 14-311 (a) provides in relevant part that no person or firm "shall build, expand, establish or operate any . . . shopping center or other development generating large volumes of traffic, having an exit or entrance on, or abutting or adjoining, any state highway or substantially affecting state highway traffic within this state until such person or agency has procured from the State Traffic Commission a certificate that the operation thereof will not imperil the safety of the public."
Standard of review of motion to dismiss administrative appeal
The standard for review of a motion to dismiss on grounds of lack jurisdiction is well established. The motion must be granted if, even when viewed in the light most favorable to the plaintiff, the allegations of the complaint fail to state a claim within the court's subject matter jurisdiction. Lawrence Brunoli, Inc. v. Town of Branford, 247 Conn. 407,410-411 (1999); Savage v. Aronson, 214 Conn. 256, 264 (1990).
"In ruling on a motion to dismiss a court must take the facts to be those alleged in the complaint, including those facts necessarily implied CT Page 11586 from the allegations, construing them in a manner most favorable to the pleader." (Citations omitted.) Villager Pond, Inc. v. Town of Darien,54 Conn. App. 178, 183 (1999).
It is also well established that there is no right of appeal from a decision of an administrative agency except as created by statute: "It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute." Munhall v. Inland Wetlands Commission,221 Conn. 46, 50 (1992); Chestnut Realty, Inc. v. Commission on HumanRights and Opportunities, 201 Conn. 350, 356 (1986). Failure to comply with statutory conditions and requirements deprives the court of subject matter jurisdiction. Rogers v. Commission on Human Rights andOpportunities, 195 Conn. 543, 550 (1985); Farricielli v. Personnel AppealBoard, 186 Conn. 198, 201 (1982).
At this stage, only the adequacy of pleading of aggrievement, not the adequacy of proof of aggrievement, is at issue. "A party, however, need not prove the merits of his case merely to have standing. Standing is an examination of the parties, not the merits of the action." ManchesterEnvironmental Coalition v. Stockton, 184 Conn. 51, 64 (1981); Maloney v.Pac, 183 Conn. 313, 319-21 (1981).
Allegations of interest
Connecticut Post alleges in its appeal that it owns the Connecticut Post Mall, a shopping center located in Milford, approximately eight miles from the mall site that was the subject of the Commission's review. (Appeal, p. 6, para. 19). It alleges that its trade area extends east of New Haven and that its patrons and stores' employees include residents of New Haven, East Haven, Branford, Guilford and Madison, and that its patrons and employees use Interstate 95 as the primary route to Connecticut Post Mall, such that congestion caused by mall-generated traffic in New Haven "will frustrate access by automobile to the Connecticut Post Mall for significant periods of time each day," obstructing access by patrons and employees and thereby injuring the business of Connecticut Post. (Appeal, p. 6, paras. 20, 22).
Connecticut Post also alleges that it "annually pays taxes to the State of Connecticut." (Appeal, p. 7, para. 23).
With regard to its claim of standing under the EPA, Connecticut Post alleges that on September 17, 1999, it submitted a petition to intervene in the Commission proceeding concerning Long Wharf's application, "on the grounds that mall-generated traffic, in combination with existing traffic, will unreasonably pollute, impair or destroy the air, water or CT Page 11587 other natural resources of the state." (Appeal, p. 7, para. 25). Connecticut Post further alleges that the Commission denied its petition to intervene and refused to allow the testimony of an expert on air quality that Connecticut Post had retained (Appeal, p. 8, para. 32); and that "without any further discussion of the . . . issues raised by Connecticut Post . . . the [Commission] voted to issue a certificate of operation to the Developer" on September 27, 1999. (Paragraph 35).
Connecticut Post claims its allegations are sufficient to allege standing I) as a classically aggrieved party; 2) as an entity that pays taxes to the state, and/or 3) as an entity entitled to assert pursuant to Conn. Gen. Stat. § 22a-196 that "the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."
Standing Based on Classical Aggrievement
Connecticut General Statutes § 14-311 (e) provides that "[a]ny person aggrieved by any decision of the State Traffic Commission hereunder may appeal therefrom in accordance with the provisions of section 4-183
. . ." It is fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. Light Rigging Co. v.Dept. of Public Utility Control, 219 Conn. 168, 172 (1991); ConnecticutBusiness Industry Assn., Inc. v. Commission on Hospitals HealthCare, 214 Conn. 726, 729 (1990).
The test for determining aggrievement encompasses a well-settled twofold determination: first the party claiming aggrievement must successfully demonstrate a specific and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. MedTrans of Connecticut, Inc. v. Dept. of Public Health Addiction Services, 242 Conn. 152, 158-59 (1997); United Cable TelevisionServices Corp. v. Department of Public Utility Control, 235 Conn. 334,342-43 (1995); State Medical Society v. Board of Examiners in Podiatry,203 Conn. 295, 299-300 (1987); Cannavo Enterprises, Inc. v. Burns,194 Conn. 43, 47 (1984).
In addition, with respect to the second part of the test, a party must make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute on which the party bases the claim or appeal. MedTrans of Connecticut, Inc. v. Dept. of PublicCT Page 11588Health Addiction Services, supra, 242 Conn. 160; United CableTelevision Services, Corp. v. Department of Public Utility Control,
supra, 235 Conn. 345; State v. Pierson, 208 Conn. 683, 687 (1988), cert. denied, 489 U.S. 1016 (1989); Connecticut Post Ltd. Partnership v. SouthCentral Connecticut Regional Council, 60 Conn. App. 21, 28 (2000). The interest that Connecticut Post asserts is an interest in not having Interstate 95 congested by traffic that may deter patrons from travelling to its mall or that may deter employees from locations to the cast of its mall from accepting employment at its mall. The interest in avoiding traffic congestion is a general interest of the public, a concern of all members of the community as a whole, not a specific personal and legal interest of Connecticut Post. The interest that Connecticut Post claims to be injured is an interest in the free flow of traffic on a road that is used to reach its mall. The interest in an uncongested highway is not special to Connecticut Post's mall, and that mall is not affected in any way that is particular to it but only in the same general way that a congested road affects all who use it or are reached by others who use it.
In those few cases in which the alleged injury was the inconvenience or other consequences of traffic congestion, the courts have based their finding that the plaintiff had standing on the fact that the plaintiff owned a residence or operated a business in the immediate vicinity of the challenged development. In Bright v. Zoning Board of Appeals,149 Conn. 698, 704 (1962), the Supreme Court ruled that because the plaintiffs lived within 650 feet of the development project at issue, the board's decision "affected them directly or in relation to a specific, personal interest, as distinguished from a general interest, in the subject matter." The finding that the creation of traffic congestion was a sufficient allegation of aggrievement in McDermott v. Zoning Board ofAppeals, 150 Conn. 510, 513 (1963), rested on the fact that the plaintiff had alleged that he owned a gasoline station on a congested intersection located across the street from the proposed use that the zoning board was considering. In Tucker v. Zoning Board of Appeals, 151 Conn. 510, 516
(1964), the Supreme Court upheld the trial court's determination that appellants who alleged that they walked and drove past a development site were not aggrieved by the authorized development.
To conclude that all those who use a roadway are aggrieved by administrative actions concerning increased land development along that roadway that increases traffic would give little effect to the requirement that an appellant allege and prove a "specific personal and legal interest [that] has been specially and injuriously affected by the decision." (Emphasis supplied.) United Cable Television Services Corp.v. Department of Public Utility Control, supra, 235 Conn. 342-43. CT Page 11589
A party may not appeal on the basis of harm done to the rights of others. Third Taxing District of City of Norwalk v. Lyons,35 Conn. App. 795, 797, cert. denied, 231 Conn. 936 (1994) (electors cannot file administrative appeal to vindicate interests of the taxing district); Sadloski v. Manchester, 235 Conn. 637, 643 (1995). Connecticut Post's allegations that patrons and employees will experience congestion in reaching its shopping mall are therefore insufficient to establish standing. While Connecticut Post may object to the establishment of another mall close by, its patrons and employees may in fact take the position that another choice of shopping or employment venues is welcome, and there is no basis for permitting Connecticut Post to presume to act on behalf of others whose interests with regard to the Commission's actions may in fact not match its own.
Status as a competitor of the entity whose development plan has in some respect been furthered by the approval of an administrative agency does not establish standing except where a statute specifically grants standing to appeal to competitors, or where the proposed competition is unfair or illegal. United Cable Television Services Corp. v. Departmentof Public Utility Control, supra, 235 Conn. 344, 346. "Ordinarily, an allegation that a governmental action will result in competition harmful to the complainant's business would not be sufficient to qualify the complainant as an aggrieved person." State Medical Society v. Board ofExaminers in Podiatry, supra, 203 Conn. 301.
Standing Based on Taxpayer Status
Connecticut Post claims that it has standing as a payer of taxes to the State of Connecticut to challenge the Commission's granting a certificate for operation to Long Wharf.
A party's status as a taxpayer does not automatically confer standing to challenge alleged improprieties in governmental conduct. Sadloski v.Manchester, supra, 235 Conn. 647; Alarm Applications, Co. v. SimsburyVolunteer Fire Co., 179 Conn. 541, 549 (1980); Bell v. Planning ZoningCommission, 174 Conn. 493, 497-98 (1978). A plaintiff must plead and prove that its tax dollars have not only contributed to the challenged project but that the project has directly or indirectly increased its taxes "or, in some other fashion, caused [it] irreparable injury in [its] capacity as a taxpayer." Sadloski v. Manchester, supra, 235 Conn. 647;Bassett v. Desmond, 140 Conn. 426, 430 (1953).
The allegation that Connecticut Post makes in its appeal with regard to standing as a taxpayer is as follows:
 30. Connecticut Post annually pays taxes to the State CT Page 11590 of Connecticut. Upon information and belief freeway and road improvements not paid for by the Developer must be paid for by the State from funds appropriated from the State's general fund. Such use of state tax revenues is illegal and will aggrieve Connecticut Post as a State taxpayer.
(Appeal, p. 17, para. 30.)
Connecticut Post alleges that
 If the [Commission] determines that roadway modifications or traffic control measures are required to handle traffic safely and efficiently, one hundred percent of the cost of such modifications and measures shall be borne by the developer. Conn. Gen. Stat. § 14-311 (d). The [Connecticut Department of Transportation] Report approved by the [Commission] does not require the Developer to pay for all roadway modifications and measures required to handle mall-generated traffic safely and efficiently and for any costs necessitated by the construction thereof. The failure to condition approval on payment for all such modifications violates Conn. Gen. Stat. § 14-311
(d).
(Emphasis supplied.) (Appeal, p. 16, para. 36.)
These allegations do not, in fact, allege that the Commission will not require the developer to pay the costs of road modifications and signals as required by § 14-311 (d), nor do they state that any administrative agency has ruled that no such payments will be required; rather, Connecticut Post alleges that a document reviewed by the Commission failed to state this requirement. Section 14-311 (d) does not require that the certificate of operation state the requirement to pay for road modifications and signals. Connecticut Post has not alleged in plain terms that the Commission has ruled that the developer will not be required to pay for modifications. It pleads only that this requirement does not appear in the approval, though there is no statutory obligation to set forth this requirement in the approval. Connecticut Post is speculating that payment will ultimately not be sought from the developer, and no allegation of its complaint states that there has been any determination by the Commission that the developer is excused from the obligation imposed by § 14-311 (d).
In order to have standing as a taxpayer, a party must plead and prove CT Page 11591 aggrievement. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483,495 (1978). Connecticut Post has not pleaded facts that, if proved, would establish aggrievement. Instead, it has pleaded a hypothetical aggrievement: if the developer is not charged for the modifications and signals required by the Commission, then Connecticut Post will suffer harm as a taxpayer, because taxpayers will foot the bill.
Though allegations in a pleading are to be favorably construed, favorable construction does not go so far as to supply necessary allegations that are nowhere stated. Alleging the absence of a requirement in the text of a document is not the same thing as alleging that an agency has actually ruled that the requirement be excused. A party should not be able to pursue a claim without actually pleading the allegations that support its standing to do so.
The allegations of the appeal are insufficient to allege the elements of standing as an injured taxpayer.
Standing Based on the Environmental Protection Act
Connecticut Post raises as another basis for standing the statutory provision permitting any legal entity to intervene "in any administrative . . . proceeding, and in any judicial review thereof made available by law . . . on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." Conn. Gen. Stat § 22a-19 (a). While it has been held that parties which fail to seek to intervene in an administrative proceeding may not initiate an appeal from the agency's decision; Hyllen-Davey v. Plan and Zoning Com'n of Town of Glastonbury,57 Conn. App. 589, cert. denied, 253 Conn. 926 (2000); the Supreme Court has ruled that a party that files a notice of intervention with the agency has standing to appeal the environmental issues associated with the agency's decision. Branhaven Plaza LLC v. Inland WetlandsCommission, 251 Conn. 269, 276 n. 9 (1999), citing Red Hill Coalition,Inc. v. Conservation Commission, 212 Conn. 710, 715 (1989).[2]
On its face, § 22a-19 authorizes intervention in "any" administrative proceeding to assert that the proceeding involves environmentally harmful conduct as defined in the statute, which is quoted above.[3] The Connecticut Supreme Court has, however, construed the statute to reconcile it with other statutes that limit the powers of various administrative and regulatory agencies and commissions to particular subject matter, and to allow the assertion only of those environmental concerns defined in § 22a-19 that are relevant to the CT Page 11592 actual conduct being reviewed. Connecticut Fund for the Environment,Inc. v. Stamford, 192 Conn. 247 (1984); Connecticut Water Co. v.Beausoleil, 20 Conn. 38, 46 (1987).
In Connecticut Fund for the Environment, Inc. v. Stamford, supra,192 Conn. 247, a would-be intervenor tried to present evidence related to environmental concerns that it conceded was not related to inland wetlands to a board that regulated activities affecting wetlands and watercourses. Connecticut Fund for the Environment, Inc. v. Stamford,
supra, 192 Conn. 249. The Court ruled that because the agency's authority was limited to inland wetlands, questions concerning air and noise pollution and environmental problems created by increased traffic should instead have been raised before the Stamford planning board, which the Court implied had jurisdiction to consider such claims. Connecticut Fundfor the Environment, Inc. v. Stamford, supra, 192 Conn. 251.
In Middletown v. Hartford Electric Light Co., 192 Conn. 591, 597
(1984), the Supreme Court explained the scope of § 22a-19 in a case in which the plaintiff had not invoked that statute but had brought a direct claim for injunctive relief pursuant to § 22a-16:
 We have recently concluded . . . that invocation of the EPA is not an open sesame for standing to raise environmental claims with regard to any and all environmental legislation. In Connecticut Fund for the Environment, Inc. v. Stamford, [supra,] 192 Conn. 247
. . ., we held that § 22a-19 of the EPA, which permits any person, on the filing of a verified pleading, to intervene in any administrative proceeding and to raise therein environmental issues "must be read in connection with the legislation which defines the authority of the particular administrative agency. Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues. Thus, an inland wetland agency is limited to considering only environmental matters which impact on inland wetlands. Other environmental impacts must be raised before other appropriate administrative bodies, "any, or in their absence by the institution of an independent action pursuant to § 22a-16."
(Emphasis supplied.)
Contrary to the position of the Commission in the instant case, the Supreme Court did not rule that § 22a-19 authorizes intervention only CT Page 11593 if the agency acting in a matter has been authorized to decide environmental matters. Rather, the Court has ruled to the effect that issues of impairment of a particular protected natural resource must be relevant to the issue or resource subject matter over which the administrative agency or commission has authority.
The Supreme Court explained the scope of its ruling in Connecticut Fundfor the Environment in Connecticut Water Co. v. Beausoleil, supra,204 Conn. 46:
 In Middletown v. Hartford Electric Light Co., [supra,] 192 Conn. . . . 596 . . . and Connecticut Fund for the Environment, Inc. v. Stamford, [supra] 192 Conn. . . . 250 . . ., we recognized that General Statutes § 22a-19 does not expand the jurisdictional authority of an administrative body acting pursuant to a separate act of title 22a to hear any and all environmental matters, but rather, limits an intervenor to the raising of those environmental matters which impact on the particular subject of the act pursuant to which the commissioner is acting. Middletown v. Hartford Electric Light Co., supra, [192 Conn.] 597; Connecticut Fund for the Environment, Inc. v. Stamford, supra, [192 Conn.] 250-51.[4]
(Emphasis in original; footnote added.)
The Appellate Court has suggested a more limiting construction, stating that intervention is authorized by § 22a-19 only if the administrative body has jurisdiction to act on the basis of environmental issues. For example, in Burton v. Dillman, 27 Conn. App. 479, 481, cert. denied, 223 Conn. 904 (1992), the Appellate Court upheld a dismissal for lack of standing where a party sought to intervene in a probate court matter concerning the sale of a home claimed to be an historic landmark. The court ruled that the probate court's statutory power "does not include preservation of historic landmarks nor can it claim jurisdiction over environmental issues." The court in Burton v. Dillman, supra,27 Conn. App. at 481, also observed, however, that the probate court was ruling only on the proposed sale of the property, not on its use. This observation suggests a sufficient alternative reason for finding a lack of standing: the agency was not acting on conduct that actually implicated use of the claimed protected resource.
Similarly, in Connecticut Post Ltd. Partnership v. South CentralConnecticut Regional Council of Governments, supra, 60 Conn. App. 35-36, which concerns the same mall development as the case now before this CT Page 11594 court, the Appellate Court stated that "[t]he right to invoke environmental standing depends on whether the asserted environmental claim falls within the statutory jurisdiction of the particular governmental agency authorized to adjudicate such a claim."[5] While this analysis suggests a narrow reading of § 22a-19 as permitting intervention to assert environmental claims only in proceedings in which the the agency operates under a statute that authorizes review of the environmental issues raised, another statement of the court in the same case undermine such a reading. The court stated, with regard to the South Central Connecticut Regional Council of Governments (which it referred to as "the planning commission"), that "[i]t may well be that the plaintiffs complaint may invoke environmental standing to challenge future decisions by the planning commission or other government actors concerning the viability and the propriety of the Long Wharf plan as it is finally configured. The plaintiff does not, however, have such standing now."
If the Appellate Court meant that only an agency with environmental jurisdiction could consider environmental issues raised pursuant to § 22a-19, then it would be nonsensical to state that the present issue could not be presented but such issues might be presented to the very same agency in the future. The Appellate Court cannot be understood as speculating that the enabling statutes of the planning commission would be amended in the future to include environmental jurisdiction. Rather, the comment is best understood in the context of Connecticut Fundfor the Environment v. Stamford, supra, 192 Conn. 247, and Middletownv. Hartford Electric Light, supra, 293 Conn. 591, as meaning that the plaintiff might have standing as to future phases of the mall development before the same commission if those future issues are within the subject matter jurisdiction of the planning commission. If the Court regarded this commission as one that would never have jurisdiction to consider issues raised under § 22a-19, it could not logically have made the comment about raising environmental issues in the future.
The agency in the case now before this court, the Commission, asserts that Connecticut Post lacked standing to intervene in its review of Long Wharf's application because the environmental issues that Connecticut Post sought to raise relate to subject matter that is not within its jurisdiction. It asserts that it is in the same position as the agency inConnecticut Fund for the Environment, Inc. v. Stamford, supra,192 Conn. 247, which was asked to consider issues of air pollution when it was acting on a proposal concerning inland wetlands under a statute regulating use of inland wetlands. The court finds this analysis to be partly accurate.
The statute under which the Commission reviewed Long Wharf's submission is Conn. Gen. Stat. 14-311 (a). That statute provides in relevant part as CT Page 11595 follows:
 No person, firm, corporation, state agency, or municipal agency or combination thereof shall build, expand, establish or operate any . . . shopping center or other development generating large volumes of traffic, having an exit or entrance on, or abutting or adjoining, any state highway or substantially affecting state highway traffic within this state until such person or agency has procured from the State Traffic Commission a certificate that the operation thereof will not imperil the safety of the public.
Conn. Gen Stat. § 14-311 (d) provides:
 [I]n determining the advisability of such certification, the State Traffic Commission shall include, in its consideration, highway safety, the width and character of the highways affected, the density of traffic thereon, the character of such traffic and the opinion and findings of the traffic authority of the municipality wherein the development is located. If the State Traffic Commission determines that traffic signals, pavement markings, channelization, pavement widening or other changes or traffic control devices are required to handle traffic safely and efficiently, one hundred percent of the cost thereof shall be borne by the person building, establishing or operating such . . . shopping center or other development generating large volumes of traffic . . .
These provisions do not entrust to the Commission authority to determine where a mall or other development that generates large volumes of traffic should be located or whether it can be located near particular roads. They do not confer authority upon the Commission to act as a land use or zoning authority. Instead, the authority conferred by these provisions is limited to the review of plans for organizing the traffic generated by the use, so that the builder of such a use will not route the traffic onto the public roadways in a way that imperils the safety of the public.
Pursuant to Conn. Gen. Stat. § 14-298, the Commission has authority to issue regulations to establish a uniform system of traffic control signals, devices, signs and markings, to review municipal plans to CT Page 11596 install traffic control signal lights, to determine which kinds of vehicles may use which highways, and to install traffic signals. Nothing in § 14-298 or any other part of Chapter 249 empowers the Commission to determine what uses may be made of land adjoining state highways.
Connecticut Post alleges in its appeal that it sought to present to the Commission evidence that the proposed traffic-generator, Long Wharf's mall, would have an impact on air quality. In its verified petition to intervene, which the Commission has appended to its brief in support of its motion to dismiss, Connecticut Post asked the Commission to consider two discrete environmental issues: 1) the impact of the presence of a large shopping center on air pollution; and 2) the impact of Long Wharf's roadway design and traffic management on air pollution. In paragraph 6 of the petition it submitted to the Commission, Connecticut Post challenges the "operation" of the proposed mall. At paragraph 9 it asserts that the Commission cannot approve the application concerning the roadway plan because other agencies had not completed environmental reviews of the project as a whole with regard to generation of traffic and environmental impact.
The Commission does not dispute in its motion that clean air is a natural resource, and it does not dispute that it was engaged in reviewing the development plan for regulating traffic on the site of the proposed development. It points out, however, that the topic before it was not whether a mall should be developed at the site, but whether the proposals for routing and otherwise regulating traffic to and from the mall would result in a pattern that would not "imperil the safety of the public," the standard imposed by Conn. Gen. Stat. § 14-311. To the extent that Connecticut Post was seeking to have an agency that was addressing the issue of a plan for regulating mall traffic assess the risk of air pollution from the design of traffic routing, it had standing under § 22a-19 to require the Commission to assess the environmental issues it raised concerning air pollution, since such issues constituted "those environmental matters which impact on the particular subject of the act pursuant to which the commission is acting." Connecticut WaterCo. v. Beausoleil, supra, 204 Conn. 46.
Contrary to Connecticut Post's contention, the Commission is not an agency charged with determining what uses may be made of particular sites, and it has no authority to decide whether a mall should exist on the site chosen by Long Wharf. Its jurisdiction extends only to review of the plan for operating the entrance and exit roadways of the facility and regulating the traffic entering and leaving the site in a manner that would not imperil the public.
The cause of the claimed aggrievement
CT Page 11597
The test for aggrievement in the context of an appeal from the decision of an administrative agency includes not only the nature of the appellant's interest and the nature of the harm claimed, but also the nexus between the harm and the agency's action. The appellant's personal and legal interest must be "specially and adversely affected by thedecision." (Emphasis supplied.) United Cable Television Services Corp.v. Dept. of Public Utility Control, 235 Conn. 334, 343 (1995). There is thus an element of causation inherent in the standard for aggrievement, as was quite evident in Hamann v. Newtown, 14 Conn. App. 521, 525
(1988). In that case, landowners applied to the town board of selectmen for a determination of the boundaries of a road that crossed their property. The board issued a resolution fixing the boundaries and declaring the road to be a private road, not a town highway. The applicants appealed, alleging that they were aggrieved by the declaration of the road as private. The Appellate Court ruled that the board lacked authority to make the determination whether the road was public or private and that that determination was legally the prerogative only of the town's legislative counsel. The court ruled that because the selectmen's declaration had not actually made the road a private road, the applicants were not aggrieved, as the action complained of had not caused the harm alleged.
Similarly, in the case before this court, the action of the State Traffic Commission in reviewing Long Wharf's plan for traffic management is not the action that causes the harm of which the plaintiffs complain. They are complaining about the siting of the mall and the authorization for the particular location to be used as a mall. Nothing in the statutory authority of the commission empowered it to make that determination.
The plaintiffs apparently reason that because a denial of a traffic certificate would have stopped development of the mall, granting of a certificate caused their harm. The test for aggrievement in the context of an administrative appeal is not, however, a mere matter of causation in fact, rather the administrative agency must have made the decision that harms the plaintiff's interest. In this case, the decision that the plaintiffs challenge is the land use decision to permit the siting of the mall in the particular location at issue. Nothing in Conn. Gen. Stat. §§ 14-298 or 14-311 empowered the State Traffic Commission to determine whether a particular location was appropriate for a shopping center. For this additional reason, the plaintiffs have failed to establish classical aggrievement.
Connecticut Post has standing to assert that the traffic plan for the mall submitted to the Commission is a design that should not have been CT Page 11598 approved because that plan is reasonably likely to impair the public trust in natural resources. Connecticut Post does not have standing to require the Commission to consider whether Long Wharf should be permitted to develop a mall on the site on the basis of asserted harm to the public trust in natural resources from creation of traffic caused by the siting of the mall.
Conclusion
The motion to dismiss the administrative appeal is denied. Though Connecticut Post Limited Partnership does not have standing in all respects that it has alleged, it has standing pursuant to Conn. Gen. Stat. § 22a-19 with regard to the environmental effects of the details of the traffic plan reviewed by the State Traffic Commission.
Beverly J. Hodgson Judge of the Superior Court